**UNITED STATES COURT OF APPEALS**
**FOR THE EIGHTH CIRCUIT**

| | |
|---|---|
| United States of America,<br><br>Appellant,<br><br>v.<br><br>Steve Simon et al.,<br><br>Appellees. | Case No. 26-2679<br><br><br><br>**STATE APPELLEES' MEMORANDUM OPPOSING EXPEDITED REVIEW** |

The Court should deny the United States' motion to expedite this appeal because the United States failed to establish good cause. At no point during the district court proceedings did the United States seek to expedite the case. That was for good reason: no emergency existed. And no emergency exists now. Further, numerous procedural and substantive flaws infect the United States' arguments. Prevailing on the narrow issue that it raises on appeal would not enable the United States to receive or do anything with Minnesota's voter data before the November election.

## FACTS

Underlying this case is the federal government's unprecedented attempt to amass the nation's voter-registration data. In the summer of 2025, the U.S. Department of Justice (DOJ) wrote to Appellee Minnesota Secretary of State Steve Simon, asking questions about the state's processes for maintaining its voter-registration list and demanding the state's underlying voter-registration data on

active and inactive voters. (R. Doc. 66-1 at 1-3.) This includes information like social-security numbers, driver's license numbers, and dates of birth. (*Id.* at 1-3, 10.) The DOJ did not cite any concerns about the state's list-maintenance practices. (*Id.* at 1-3.) Instead, the DOJ cited the Help America Vote Act (HAVA), which requires states to have a system that makes reasonable efforts to maintain voter-registration lists. (*Id.* at 1.)

The Secretary's office provided detailed responses to each question, outlining the state's numerous processes for verifying eligibility to vote and routinely updating the state's voter-registration list. (*Id.* at 4-37.) Because no legal basis existed for the data request, however, the Secretary declined to divulge millions of Minnesota voters' highly personal data. (*Id.* at 10-11.)

The DOJ sent a second letter in August 2025, again requesting voter-registration data. (R. Doc. 66-2 at 1.) For the first time, it cited Title III of the Civil Rights Act of 1960, claiming the request was to assess compliance with HAVA's list-maintenance requirements. (*Id.* at 1-2.) The DOJ did not ask any questions about, or identify any concerns with, the state's list-maintenance practices outlined in the Secretary's response to the first letter. (*Id.*) The Secretary again declined to provide the data and reminded the DOJ that it could obtain Minnesota's public information list under Minn. Stat. § 201.091, subd. 4(a) (2024). (*Id.* at 3-8.) That list contains each registered voter's name, address, birth year, and voting history (i.e., whether

someone voted in a particular election). Minn. Stat. § 201.091, subd. 4(a). The DOJ did not request the state's public-information list. (R. Doc. 66 ¶ 5.)

In September 2025, more than a month after the Secretary's last response, the United States sued the Secretary of State and the state, alleging that they violated HAVA and Title III of the Civil Rights Act of 1960 by not providing unredacted voter data. (R. Doc. 1 at 13-15.) The United States then waited more than a month to serve the complaint. (R. Doc. 56-57.) The United States later moved to stay the case pending the federal government shut down. (R. Docs. 18-19, 27.) When the shutdown ended, the United States moved to extend various deadlines, including having the briefing for any dispositive motions extend into 2026. (R. Doc. 52.) At no point did the United States seek to expedite the case, which then proceeded at a standard pace. The court heard all dispositive motions in March and requested supplemental briefing. (R. Doc. 157.)

In August, the district court granted the defendants' motions to dismiss and denied the United States' motion to compel. *United States v. Simon*, No. 25-cv-3761, 2026 WL 2389778 (D. Minn. Aug. 17, 2026). With respect to the Title III claim, the court held that the state's voter-registration list is not a record within the meaning of the Civil Rights Act and thus not subject to Title III record demands. *Id.* at *8-11. Because this issue was dispositive, the court did not reach the appellees' many other arguments, including that (1) DOJ's demand did not include a basis or proper purpose as required by the statute; (2) even if the demand was facially valid, it was

not made in good faith or for a legitimate purpose (or, at minimum, a fact dispute existed on those issues); and (3) the demand violated various federal privacy laws. (*E.g.*, R. Docs. 65 at 20-28, 103 at 9-28; 112 at 9-16.)

The district court also dismissed the HAVA claim. Recognizing that the United States never claimed Minnesota was violating HAVA, the court rejected the United States' assertion of an unfettered right to obtain discovery to look for a violation. *Simon*, 2026 WL 2389778, at *12. The district court held that, as with any plaintiff, the United States could not engage in a fishing expedition to seek discovery in hopes of finding a claim. *Id.*

Minnesota was not alone in rejecting the DOJ's data request. Most other states did too, and the United States responded by filing thirty-one lawsuits across the country. In dismissing the United States' complaint, the Minnesota court was consistent with every other court—twenty-two district courts and the Sixth Circuit—that has issued a decision. *Id.* at *1 (collecting cases). The United States filed its notice of appeal on the same day as the district court's decision.

## ARGUMENT

The Court may expedite a case only for good cause. 28 U.S.C § 1657; Fed. R. App. P. 2. The United States lacks good cause for multiple reasons: any timing dilemma the United States faces is of its own making, its arguments relative to the upcoming election rest on faulty procedural and substantive premises, and it is

unlikely to prevail on the merits. Finally, even if the Court expedites the appeal, it should not adopt the United States' proposed schedule.

## I. THE UNITED STATES DID NOT EXPEDITE DISTRICT COURT PROCEEDINGS.

The United States claims that it bears no responsibility for the timing of this case. (Mot. 3.) Its conduct throughout the litigation reflects otherwise. While it quickly appealed the district court's decision, the appeal and current motion mark the first time that the United States has suggested the case requires any immediate attention. Treating a case with urgency only when confronted with a loss is not good cause.

After the Secretary's last response to correspondence last summer, the United States waited more than a month to sue. It then waited more than another month to serve the complaint, waiting until late October. Then it moved to stay the case and later moved to extend dispositive-motion briefing into 2026. The court heard oral argument in March, requested supplemental briefing that was due in April, and decided the motions in August. At no point did the United States seek to expedite the case or otherwise suggest any urgency. The Court should not now reward the United States' lack of diligence by requiring the other parties and the Court to scramble so it can skip to the head of the appellate queue.

This lack of diligence also belies the United States' argument that a tangential election connection supports expediting. If such a connection supported expedition now, it should have in the district court. But it did not then, and it does not now.

Instead, the election cases where this Court has expedited appeals are all readily distinguishable: each involved issues that arose shortly before, and directly affected administration of, upcoming elections. *See, e.g.*, *Craig v. Simon*, 980 F.3d 614, 616 (8th Cir. 2020) (addressing whether November congressional election had to proceed despite state law requiring special election when major-party candidate died shortly before election); *Carson v. Simon*, 978 F.3d 1051, 1056 (8th Cir. 2020) (addressing absentee-ballot return deadline); *see also Uno v. City of Holyoke*, 72 F.3d 973, 978 (1st Cir. 1995) (addressing ward boundaries for city election); *see also* Mot. 10 (citing *Carson*, *Craig*, and *Uno*). This case, in contrast, is nothing like those cases because it has nothing to do with election-day procedures.

The United States also attempts to mislead the Court by suggesting that the other appellate courts have expedited similar cases, citing the Sixth and Ninth Circuits. (Mot. 10.) But it fails to disclose that the First, Fourth, and Seventh Circuits denied the United States' motions to expedite parallel appeals. *E.g.*, *United States v. DeMarinis*, No. 26-1878 (4th Cir. Aug. 4, 2026); *United States v. Galvin*, No. 26-1657 (1st Cir. July 6, 2026) (denying, in consolidated orders, motions to expedite appeals in three cases); *United States v. Wis. Elections Comm'n*, No. 26-2217 (7th Cir. June 18, 2026). And even the Sixth and Ninth Circuits partially *denied* the United States' motions and set reasonable briefing schedules. *E.g.*, *United States v. Oregon*, No. 26-1231 (9th Cir. Mar. 17, 2026) (addressing two appeals in consolidated order and giving appellees thirty days to file responsive brief); *United*

*States v. Benson*, No. 26-1225 (6th Cir. Mar. 11, 2026) (giving appellees twenty-one days to file response brief). Moreover, while the Ninth Circuit heard oral argument in two cases in May, it has not yet decided them.

Further undercutting the United States' claimed emergency is its inconsistency in which appeals it attempts to expedite. For example, it did not move to expedite briefing or argument in its Second, Third, or Tenth Circuit appeals.[1] *See, e.g.*, *United States v. Griswold*, No. 26-1326 (10th Cir. Aug. 18, 2026); *United States v. Thomas*, No. 26-2064 (2d Cir. July 28, 2026); *United States v. Oliver*, No. 26-2126 (10th Cir. July 27, 2026); *United States v. Bd of Elections of N.Y.*, No. 26-2060 (2d Cir. July 24, 2026); *United States v. Secretary of State for Penn.*, No. 26-2684 (3d Cir. July 7, 2026). But for this case, docketed August 21, the United States somehow insists that all briefing must be completed in less than a month and the Court must immediately hear and decide it. As reflected by the United States' conduct in the district court and its haphazard appellate approach, no good cause exists to expedite the appeal.

---

[1] The Second Circuit recently issued notices of expedited appeals, but it did so under a local rule providing a standing expedited calendar for certain types of cases, such as those dismissed for failing to state a claim. 2d Cir. R. 31.2(b); *United States v. Thomas*, No. 26-2064 (2d Cir. Aug. 20, 2026); *United States v. Bd of Elections of N.Y.*, No. 26-2060 (2d Cir. Aug. 13, 2026). The expedited schedule is not tied to resolving the case before the election or significantly expediting briefing. For example, in *Board of Elections*, the order sets the United States' briefing deadline as September 17 and the appellees' as October 22.

## II. THE UNITED STATES RELIES ON FLAWED PROCEDURAL AND SUBSTANTIVE REASONING.

The Court should also deny the motion because the United States rests on a flawed premise: that prevailing would allow it to obtain, analyze, and somehow act on the state's voter data before the 2026 general election on November 3. For multiple reasons, this argument is procedurally and substantively flawed.

First, the United States' proposed schedule ignores the realities of Minnesota's voting procedures. Absentee voting for the upcoming general election in Minnesota begins September 18 and early voting starts October 16. Minn. Stat. §§ 203B.081, subds. 1, 1a (2024); *see also id.* § 201.13, subd. 3(a) (limiting certain changes 47 days before election). And even if the United States prevails before a panel of this Court, further appeals are likely. Voting will thus be well underway by the time this case reaches final resolution, particularly because—as noted in more detail below—the issue the United States appealed will not end the case. The United States' fanciful course of obtaining a final decision and then receiving, analyzing, and disenfranchising voters it does not believe are eligible before voting begins is unrealistic.

Second, the United States disregards the multiple alternative grounds that the appellees raised to support dismissal. Prevailing on the threshold issue that voter-registration lists are potentially subject to a Title III demand does not resolve whether the United States made a facially sufficient demand. Rather, the parties would still

have to litigate whether the demand stated a basis for believing Minnesota was violating the law and a proper purpose under the Civil Rights Act. 52 U.S.C. § 20703 (requiring demand include "statement of the basis and the purpose therefor"). Nor would it resolve whether the demand was made in good faith and for a legitimate purpose. The federal government cannot use its authority if acting in bad faith or for an illegitimate purpose. *See, e.g.*, *Trump v. Vance*, 591 U.S. 786, 805 (2020); *United States v. Powell*, 379 U.S. 48, 58 (1964). The appellees made a sufficient showing that, at a minimum, established a fact dispute on their defenses. (*E.g.*, R. Docs. 103 at 17-23, 104 ¶¶ 2-4 (providing statements from federal government reflecting request was not tied to concerns about Minnesota's HAVA compliance and not made in good faith).) The state appellees also made clear that, if the district court denied their motion to dismiss, they intended to raise counterclaims about whether the demand and intended uses violated other federal laws. (R. Doc. 103 at 8, 23-28.) All of these issues would require remand.

Third, the United States' claimed end goal of auditing Minnesota's voter-registration list is puzzling.[2] It alleges it wants to review the list to identify specific

[2] The United States' data demand also far exceeded the state's voter-registration list. By definition, the list contains only currently registered voters. 52 U.S.C. § 21083(a)(1)(A)(ii). Yet the United States also demanded data on inactive voters who would not appear on the list of registered voters. (*E.g.*, R. Doc. 66-2 at 1.) Further, by its nature, the voter-registration list is a dynamic document. Reviewing a static list on a single day would not establish whether Minnesota has a list-maintenance system or demonstrate whether that system is reasonable under the law.

voters for removal. (Mot. 17.) The United States does not have a role in list maintenance. HAVA directs states to have a centralized voter-registration list and maintain it "on a regular basis," with the standard being that states have "a system of file maintenance that makes a reasonable effort" to remove ineligible registrants. 52 U.S.C. § 21083(a)(2)(A), (4)(A). HAVA does not give the federal government auditing authority. Nor would the presence of a potentially ineligible voter on a list establish a HAVA violation. *See, e.g.*, *Pub. Int. Legal Found. v. Benson*, 136 F.4th 613, 626-27 (6th Cir. 2025) (rejecting argument that allegedly ineligible voters on list established HAVA violation), *cert. denied*, 146 S. Ct. 1772 (2026).

Minnesota indisputably has a centralized list and robust processes for maintaining it. *See, e.g.*, R. Doc. 66-1 at 4-10 (identifying state statutes and rules). By its own admission, the United States is not interested Minnesota's list-maintenance system; it simply wants to rifle through the state's data, share it with other agencies, and use it for other law-enforcement purposes. (*E.g.*, Mot. 16-17.)

Further, HAVA vests all list-maintenance activity in the states. States, not the federal government, define, maintain, and administer registration lists; perform list maintenance; and decide whether to register particular applicants. *Id.* §§ 21083(a)(1)(A), (4)(A), (5)(A)(iii), 21085. And any removal from the list is done consistent with Minnesota law, not by the federal government. *Id.* § 21083(a)(2)(iii). Minnesota has robust list-maintenance processes and does not need the federal government's "help." The federal government's desire to insert itself into list

maintenance—particularly when it has never claimed Minnesota lacks a HAVA-compliant list-maintenance process—does not warrant expediting the appeal.

Finally, the United States claims that Minnesota voters and election officials need a "quick answer." (Mot. 3, 9-10.) Minnesota voters and election officials have the well-settled answers they need: states administer elections; Minnesota elections are safe, fair, and secure; state law protects sensitive voter-registration data; Minnesota has robust list-maintenance procedures; and—as the district court held—the federal government does not have freewheeling authority to demand voter data or undertake a fishing expedition. *Simon*, 2026 WL 238977, at *11-12. The United States has received some variation of this answer twenty-four times. It is only the United States that feigns uncertainty after the consistent response to its unprecedented efforts to sweep up data. Its refusal to accept that its claims lack merit should not create an emergency for the Court or the appellees.

## III. THE UNITED STATES IS UNLIKELY TO PREVAIL.

Throughout its motion, the United States offers its views on the merits of its Title III claims. The state appellees will reserve their full arguments for their merits brief. For now, they note that the United States' arguments have been soundly rejected by twenty-four courts, including district courts across the country and the Sixth Circuit. *Simon*, 2026 WL 2389778, at *1 (citing cases).

The Civil Rights Act of 1960 provides investigative authority related to civil-rights violations involving the right to vote. The law requires election officials to

retain certain election "record[s] or paper[s]" that "come into [their] possession," and to provide them upon a proper written demand from the U.S. Attorney General. 52 U.S.C. §§ 20701, 20703. Congress enacted the law in response to southern states destroying voters' registration applications and similar documents, which thwarted civil-rights investigations. *E.g.*, U.S. Comm'n on Civil Rights, *Report of the United States Commission on Civil Rights 1959* 40, 93, 137 (1959), https://perma.cc/J55Z-VVP8. The United States, however, has now sought to wield this power in unprecedented ways untethered to its purpose. (*See* R. Doc. 123 (reflecting view of former DOJ attorneys with about 214 collective years of DOJ experience that current voter-data demand "is inconsistent with prior DOJ practice and cannot be justified by any of the authorities it has invoked.") Courts have carefully considered and repeatedly rejected this use of Title III. As the district court held here, Title III does not give the United States "freewheeling" authority to demand voter data. *Id.* at *11. Nor can it undertake a "fishing expedition" to hunt for a claim. *Id.* at *12.

## IV. If the Court Expedites the Case, it Should Not Adopt the United States' Proposed Schedule.

The United States has not established good cause to expedite the case. But even if the Court expedites the case and shortens the briefing period, the state appellees request that the Court amend the United States' proposed schedule due to the workload and preexisting commitments among the state appellees' counsel. Under the current schedule, the United States' brief is due October 13. The state

appellees respectfully request that, regardless of when the United States files its brief, the state appellees brief be due no earlier than October 9.

## CONCLUSION

Because no good cause exists to expedite this appeal, the Court should deny the United States' motion.

Dated: August 24, 2026

Respectfully submitted,

KEITH ELLISON
Attorney General
State of Minnesota

**/s/ Angela Behrens**

ANGELA BEHRENS, #0351076
ALLEN COOK BARR, #0399094
LINDSEY MIDDLECAMP, #0392589
Assistant Attorneys General

445 Minnesota Street, Suite 600
St. Paul, MN 55101-2125
(651) 757-1204 (Voice)
(651) 297-1235 (Fax)
angela.behrens@ag.state.mn.us

ATTORNEYS FOR APPELLEES SIMON AND STATE OF MINNESOTA

|#6437103



Appellate Case: 26-2679 Page: 13 Date Filed: 08/24/2026 Entry ID: 5675616

## CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32

1. This memorandum complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 3,093 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point Times New Roman font.

**/s/ Angela Behrens**
ANGELA BEHRENS
Assistant Attorney General



Appellate Case: 26-2679 Page: 14 Date Filed: 08/24/2026 Entry ID: 5675616

## CERTIFICATE OF SERVICE

I hereby certify that on August 24, 2026, I caused to be filed the State Appellee's Memorandum Opposing Expedited Review with the Clerk of Court for the U.S. Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/**Angela Behrens**
ANGELA BEHRENS