**No. 26-2679**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT**

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellant,*

v.

STEVE SIMON, in his official capacity as Secretary of State for the State of Minnesota; MINNESOTA, STATE OF,

*Defendants-Appellees,*

MINNESOTA ALLIANCE FOR RETIRED AMERICANS EDUCATION FUND; MISAEL HERNANDEZ; COMMON CAUSE; LEAGUE OF WOMEN VOTERS OF MINNESOTA; VALERIE MANGSKAU; JENNIFER COMPEAU; NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE; AND CYNTHIA WILSON,

*Intervenor Defendants-Appellees.*

---

On Appeal from the United States District Court for the District of Minnesota
Case No. 25-cv-03761 (KMM/EMB)

---

# JOINT ANSWERING BRIEF OF INTERVENOR DEFENDANTS-APPELLEES LEAGUE OF WOMEN VOTERS OF MINNESOTA, COMMON CAUSE, VALERIE MANGSKAU AND JENNIFER COMPEAU

---

TERESA J. NELSON
DAVID P. MCKINNEY
**AMERICAN CIVIL LIBERTIES UNION OF MINNESOTA**
2828 University Ave SE
Minneapolis, MN 55414
(651) 645-4097
tnelson@aclu-mn.org
dmckinney@aclu-mn.org

PATRICIA J. YAN
**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
915 15th Street NW
Washington, DC 20005
(202) 457-0800
pyan@aclu.org

ANDREW J. PIEPER
**STOEL RIVES LLP**
33 South Sixth Street, Suite 4200
Minneapolis, MN 55402
Telephone: 612.373.8800
andrew.pieper@stoel.com

THERESA J. LEE
SOPHIA LIN LAKIN
**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
tlee@aclu.org
slakin@aclu.org

*Counsel for Intervenor Defendants-Appellees League of Women Voters of Minnesota, Common Cause, Jennifer Compeau, and Valerie Mangskau*

## SUMMARY OF THE CASE

The right to vote is "preservative of all [other] rights." *Yick Wo v. Hopkins*, 118 U.S. 356, 370 (1886). Congress has legislated to protect this right, including through Title III of the Civil Rights Act of 1960 ("CRA"), 52 U.S.C. § 20701 *et seq.*, and the Help America Vote Act (HAVA), 52 U.S.C. § 20901 *et seq*.

This appeal concerns the United States of America's ("Appellant") attempt to misuse these laws to compel the State of Minnesota to surrender an unredacted copy of its statewide voter registration list ("SVRL")—including every registrant's date of birth, driver's license number, and partial Social Security number. Appellant seeks the SVRL and the sensitive personal data of millions of Minnesotans by invoking the CRA, a statute meant to facilitate investigation into Jim Crow states' denial of voter registration to Black citizens.

Here, the district court, like numerous other courts throughout the country, dismissed Appellant's CRA claim, finding that the SVRL is not covered by the CRA because it is not a record that "comes into his possession." 52 U.S.C. § 20701. The Court can affirm on this basis or on multiple independent alternative grounds.

Intervenor Defendants-Appellees League of Women Voters of Minnesota, Common Cause, Jennifer Compeau, and Valerie Mangskau respectfully request oral argument given the importance of the questions presented. Intervenor Defendants-Appellees request 20 minutes for oral argument.

## DISCLOSURE STATEMENT

Intervenor Defendants-Appellees League of Women Voters of Minnesota, Common Cause, Valerie Mangskau, and Jennifer Campeau state pursuant to Federal Rule of Appellate Procedure 26 that they do not have any parent corporation and no publicly held corporation owns 10% or more of their stock.



Appellate Case: 26-2679 Page: 4 Date Filed: 09/17/2026 Entry ID: 5684814

# TABLE OF CONTENTS

**Page**


SUMMARY OF THE CASE ..... i

DISCLOSURE STATEMENT ..... ii

TABLE OF AUTHORITIES ..... v

JURISDICTIONAL STATEMENT ..... 1

STATEMENT OF THE ISSUES ..... 2

STATEMENT OF THE CASE ..... 4

I. STATUTORY BACKGROUND: TITLE III OF THE CIVIL RIGHTS ACT OF 1960. ..... 4

II. FACTUAL BACKGROUND ..... 7

A. The Department of Justice's Demand for Minnesota's Unredacted Voter File. ..... 7

B. The United States Seeks to Unlawfully Construct a National Voter Database. ..... 9

III. PROCEDURAL BACKGROUND ..... 17

SUMMARY OF THE ARGUMENT ..... 18

STANDARD OF REVIEW ..... 20

ARGUMENT ..... 21

I. THE SVRL FALLS OUTSIDE TITLE III BECAUSE IT IS NOT A RECORD THAT "COMES INTO" AN ELECTION OFFICIAL'S POSSESSION. ..... 21

A. To "come into" possession means to acquire a record from an external source—and the Secretary acquires the SVRL from no one. ..... 22

B. Reading the SVRL into Title III would make a federal crime of the list maintenance the NVRA and HAVA require—an absurdity the plain text avoids. ..... 25

II. APPELLANT'S REQUEST IS LEGALLY DEFICIENT BECAUSE IT FAILS TO PROVIDE THE STATUTORILY REQUIRED STATEMENT OF ITS BASIS AND ITS PURPOSE. ..... 28

A. Appellant is not entitled to summary proceedings because the Federal Rules of Civil Procedure apply. ....28

B. Appellant's demand fails to satisfy Title III's basis and purpose requirements. ....32

C. Appellant's demand separately fails because it is pretextual. ....37

III. THE DEMAND FAILS FOR THE INDEPENDENT REASON THAT THE UNREDACTED SVRL CANNOT LAWFULLY BE COMPELLED. ....39

A. Redaction of voters' sensitive identifiers is required before any disclosure. ....40

B. The demand independently fails because the United States has not complied with the Privacy Act. ....43

IV. CONCLUSION ....46



Appellate Case: 26-2679 Page: 6 Date Filed: 09/17/2026 Entry ID: 5684814

## TABLE OF AUTHORITIES

**Cases**

*Alabama v. United States*,
304 F.2d 583 (5th Cir. 1962), *aff'd* 371 U.S. 37 (1962) ....................................5

*Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Soc. Sec. Admin.*,
No. 1:25-cv-596-ELH (D. Md. Jan. 16, 2026), Dkt. No. 197 ............................45

*Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Soc. Sec. Admin.*,
No. 25-cv-596, Dkt. No. 197 (D. Md. Jan. 16, 2026) (Notice of Correction to the Record) ........................................................12, 13, 14

*Brown v. St. Louis Police Dep't*,
691 F.2d 393 (8th Cir. 1982) ........................................................20, 39

*Bryan v. United States*,
524 U.S. 184 (1998)........................................................................27

*Buckley v. Am. Const. L. Found., Inc.*,
525 U.S. 182 (1999)........................................................................44

*In re Coleman*,
208 F. Supp. 199 (S.D. Miss. 1962), *aff'd sub nom. Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963) ................................................6

*Cook v. George's, Inc.*,
952 F.3d 935 (8th Cir. 2020) ..........................................................20

*Donaldson v. United States*,
400 U.S. 517 (1971)....................................................................30, 31

*Honeycutt v. United States*,
581 U.S. 443 (2017)....................................................................2, 23

*Kennedy v. Lynd*,
306 F.2d 222 (5th Cir. 1962) ......................................................passim

*Minn. Telecom All. v. FCC*,
175 F.4th 905 (8th Cir. 2026) ..................................................2, 20, 22

*Niz-Chavez v. Garland*,
593 U.S. 155 (2021)....................................................................................39

*Project Vote/Voting for Am., Inc. v. Long*,
682 F.3d 331 (4th Cir. 2012) ..................................................................3, 41, 43

*Pub. Int. Legal Found., Inc. v. Bellows*,
92 F.4th 36 (1st Cir. 2024)...........................................................................3, 40

*Pub. Int. Legal Found., Inc. v. Dahlstrom*,
673 F. Supp. 3d 1004 (D. Alaska 2023) ..........................................................40

*Pub. Int. Legal Found., Inc. v. Matthews*,
589 F. Supp. 3d 932 (C.D. Ill. 2022), *clarified on denial of reconsideration,* No. 20-CV-3190, 2022 WL 1174099 (C.D. Ill. Apr. 20, 2022).....................................................................................41

*Pub. Int. Legal Found., Inc. v. N.C. State Bd. of Elections*,
996 F.3d 257 (4th Cir. 2021) ........................................................................40

*Roberson v. Dakota Boys & Girls Ranch*,
42 F.4th 924 (8th Cir. 2022) .........................................................................21

*Rutan v. Republican Party of Ill.*,
497 U.S. 62 (1990).......................................................................................44

*Sierra Club v. Marsh*,
907 F.2d 210 (1st Cir. 1990)..........................................................................26

*Smith v. Spizzirri*,
601 U.S. 472 (2024)......................................................................................33

*TCI of N. Dakota, Inc. v. Schriock Holding Co.*,
11 F.3d 812 (8th Cir. 1993) .......................................................................3, 40

*United States v. Adams*,
No. 26-cv-00019, 2026 WL 2123871 (E.D. Ky. July 23, 2026)............17, 22, 28

*United States v. Aguilar*,
No. 25-cv-00728, 2026 WL 2364502 (D. Nev. Aug. 14, 2026) ...........17, 22, 33



Appellate Case: 26-2679 Page: 8 Date Filed: 09/17/2026 Entry ID: 5684814

*United States v. Amore*,
831 F. Supp. 3d 149 (D.R.I. 2026),
*appeal docketed*, No. 26-1665 (1st Cir. June 9, 2026) .....................17, 28, 32, 35

*United States v. Bd. of Elections of N.Y.*,
No. 25-cv-1338, 2026 WL 1999921 (N.D.N.Y. July 10, 2026)..................passim

*United States v. Bellows*,
No. 25-cv-468, 2026 WL 1430481 (D. Me. May 21, 2026) .......................passim

*United States v. Benson*,
179 F.4th 470 (6th Cir. 2026), *reh'g en banc denied*, No. 26-1225,
2026 WL 2364306 (6th Cir. Aug. 14, 2026) ...............................................passim

*United States v. Benson*,
819 F. Supp. 3d 753 (W.D. Mich. 2026), *aff'd*, 179 F.4th 470 (6th
Cir. 2026) .........................................................................................2, 17, 22, 24

*United States v. Cacioppo*,
460 F.3d 1012 (8th Cir. 2006) ...........................................................................22

*United States v. Caldwell*,
No. 26-cv-2025, 2026 WL 2186515 (D.N.J. July 29, 2026)
(unpublished) ...........................................................................................17, 22, 28

*United States v. Cartwright*,
230 F. Supp. 873 (M.D. Ala. 1964) .....................................................................5

*United States v. DeMarinis*,
No. SAG-25-3934, 2026 WL 1780586 (D. Md. June 18, 2026)......17, 22, 26, 28

*United States v. Edwards*,
996 F.2d 1213 (4th Cir. 1993) (unpublished table decision)..............................27

*United States v. Evans*,
No. cv 25-4403, 2026 WL 2267774 (D.D.C. Aug. 6, 2026)............17, 22, 24, 25

*United States v. Fontes*,
832 F. Supp. 3d 944 (D. Ariz. 2026) .....................................................18, 24, 28

*United States v. Fontes*,
No. CV-26-00066, 2026 WL 1177244 (D. Ariz. Apr. 28, 2026).......................22



Appellate Case: 26-2679 Page: 9 Date Filed: 09/17/2026 Entry ID: 5684814

*United States v. Galvin*,
830 F. Supp. 3d 122 (D. Mass. 2026),
*appeal docketed*, No. 26-1657 (1st Cir. June 9, 2026) ................................passim

*United States v. Garrido*,
995 F.2d 808 (8th Cir. 1993) .........................................................................39

*United States v. Griswold*,
No. 25-cv-3967, 2026 WL 2235374 (D. Colo. Aug. 3, 2026),
*appeal docketed*, No. 26-1326 (10th Cir. Aug. 18, 2026) ......................17, 22, 28

*United States v. Koski*,
No. 26CV42, 2026 WL 2032532 (E.D. Va. July 14, 2026) ........................passim

*United States v. Matthews*,
No. 25-cv-3398, 2026 WL 2212877 (C.D. Ill. July 31, 2026) ....................passim

*United States v. Mayton*,
335 F.2d 153 (5th Cir. 1964) ...........................................................................4

*United States v. Oliver*,
No. 25-cv-01193, 2026 WL 2031479 (D.N.M. July 14, 2026)....................17, 28

*United States v. Oregon*,
828 F. Supp. 3d 1092 (D. Or. 2026) ..........................................................passim

*United States v. Powell*,
379 U.S. 48 (1964).....................................................................................2, 30

*United States v. Scanlan*,
No. 25-cv-371, 2026 WL 1864054 (D.N.H. June 29, 2026)
*appeal docketed*, No. 26-1783 (1st Cir. July 7, 2026)................................passim

*United States v. Schmidt*,
No. 25-cv-01481, 2026 WL 1850016 (W.D. Pa. June 27, 2026)................passim

*United States v. Thomas*,
No. 26-cv-21, 2026 WL 2070437 (D. Conn. July 17, 2026),
*appeal docketed*, No. 26-2064 (2d Cir. July 28, 2026) ................................17, 22

*United States v. Warner*,
No. 26-cv-156, 2026 WL 2018877 (S.D.W.V. July 13, 2026) ........17, 28, 33, 38



Appellate Case: 26-2679 Page: 10 Date Filed: 09/17/2026 Entry ID: 5684814

*United States v. Weber*,
816 F. Supp. 3d 1168 (C.D. Cal. 2026) ....................passim

*United States v. Wis. Elections Comm'n*,
833 F. Supp. 3d 949 (W.D. Wis. 2026) ....................17, 22

**Federal Statutes**

5 U.S.C. § 552a(a)(3) ....................43

5 U.S.C. § 552a(a)(5) ....................43

5 U.S.C. § 552a(e)(4) ....................43

5 U.S.C. § 552a(e)(7) ....................3, 20, 43

5 U.S.C. § 552a(f) ....................43

26 U.S.C. § 7604(a) ....................30

52 U.S.C. § 20507 ....................13

52 U.S.C. § 20507(i)(1) ....................24, 40

52 U.S.C. § 20507(a)(4) ....................2, 18, 21, 26

52 U.S.C. § 20701 ....................passim

52 U.S.C. § 20702 ....................2, 18, 27, 28

52 U.S.C. § 20703 ....................passim

52 U.S.C. § 20704 ....................3, 42

52 U.S.C. § 20705 ....................passim

52 U.S.C. § 21083(a)(1)(A) ....................24

52 U.S.C. § 21083(a)(2)(A) ....................37

52 U.S.C. § 21083(a)(4) ....................passim

52 U.S.C. § 21083(a)(4)(A) ....................36

52 U.S.C. § 21083(a)(4)(B) ....................36



Appellate Case: 26-2679 Page: 11 Date Filed: 09/17/2026 Entry ID: 5684814

52 U.S.C. § 21083(b)(4) ....................3

52 U.S.C. § 21083(b)(4)(A)....................8, 34, 35

52 U.S.C. § 21083(b)(4)(B) ....................8, 34, 35

52 U.S.C. § 21085....................37

Civil Rights Act of 1957, Pub. L. No. 85-315, 71 Stat. 634....................4

Civil Rights Act of 1960 ....................passim

Civil Rights Act of 1960, Title III ....................passim

Civil Rights Act of 1964, 42 U.S.C. § 2000a *et seq.* ....................6

Help America Vote Act of 2002 (HAVA), 52 U.S.C. §§ 20901 *et seq.*....................passim

National Voter Registration Act (NVRA), 52 U.S.C. §§ 20501 *et seq.* ....................passim

Privacy Act of 1974, 5 U.S.C. § 552a....................20, 43, 44

Voting Rights Act of 1965....................6


**State Statutes**


Minn. Stat. § 201.091(9) ....................3, 8


**Rules**


Fed. R. Civ. P. 1 ....................2, 29

Fed. R. Civ. P. 81(a)(5)....................2, 29

Fed. R. Civ. P. 12....................31

Fed. R. Civ. P. 12(b)(6)....................20, 21


**Presidential Papers**


Exec. Order No. 14,399, 91 Fed. Reg. 17125 (Mar. 31, 2026) ....................14, 16, 38


**Constitutional Provisions**


U.S. Const. amend. I ....................20, 42, 43

U.S. Const. amend. XIV ........................................................................4, 41

U.S. Const. amend. XV ..........................................................................4

**Legislative History**

106 Cong. Rec. 5326 (1960) ...............................................................5, 32

H.R. Rep. No. 86-956 (1959) ....................................................................4

**Other Authorities**

Citizens for Responsibility and Ethics in Washington, *CREW Sues DOJ for Failing to Produce Records on Voter Data Collection*, Citizens for Resp. & Ethics in Wash. (published Dec. 19, 2025) https://www.citizensforethics.org/legal-action/lawsuits/crew-sues-doj-for-failing-to-produce-records-on-voter-data-collection/ [https://perma.cc/2BB3-WMN2] ..........................................15, 16, 17

Citizens for Responsibility and Ethics in Washington, *CREW Sues DOJ for Failing to Produce Records on Voter Data Collection*, Records: Part 1, CREW v. DOJ-CRT-00828 (Apr. 14, 2026) [https://perma.cc/CQU6-68RR] ..........................................................16

Citizens for Responsibility and Ethics in Washington, *CREW Sues DOJ for Failing to Produce Records on Voter Data Collection*, Records, Part 2, CREW v. DOJ-CRT-001182 (Apr. 14, 2026) [https://perma.cc/T9B9-XJQW] ....................................................16, 17

Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. Times, Sept. 9, 2025, https://www.nytimes.com/2025/09/09/us/politics/trump-voter-registration-data.html ..................................................................10

Emily Bazelon & Rachel Poser, *The Unraveling of the Justice Department*, N.Y. Times Magazine, Nov. 16, 2025, https://www.nytimes.com/interactive/2025/11/16/magazine/trump-justice-department-staff-attorneys.html ...........................................11

Jonathan Shorman, *DOJ is Sharing State Voter Roll Lists with Homeland Security*, Stateline, Sept. 12, 2025, https://stateline.org/2025/09/12/doj-is-sharing-state-voter-roll-lists-with-homeland-security ................................................................10

Jonathan Shorman, *Trump's DOJ Offers States 'Confidential' Deal to Wipe Voters Flagged by Feds*, STATELINE, Dec. 18, 2025, https://stateline.org/2025/12/18/trumps-doj-offers-states-confidential-deal-to-wipe-voters-flagged-by-feds-as-ineligible........................13

Jude Joffe-Block, *Trump's SAVE Tool Is Looking for Noncitizen Voters. But It's Flagging U.S. Citizens Too*, NPR, Dec. 10, 2025, https://perma.cc/6P7X-NZXL..........................................................................10

Kaylie Martinez-Ochoa, Eileen O'Connor & Patrick Berry, Brennan Ctr. for Just., Tracker of Justice Department Requests for Voter Information (updated Aug. 24, 2026), https://www.brennancenter.org/our-work/research-reports/tracker-justice-department-requests-voter-information ..................................7, 12, 22, 45

Kyle Cheney, *Trump Administration Concedes DOGE Team May Have Misused Social Security Data*, POLITICO, Jan. 20, 2026, https://www.politico.com/news/2026/01/20/trump-musk-doge-social-security-00737245..........................................................................12

Miles Parks & Jude Joffe-Block, *Trump's DOJ Focuses in on Voter Fraud, with a Murky Assist from DOGE*, NPR, May 22, 2025, https://perma.cc/6QPB-NLZ8..........................................................................10

Pam Bondi, Letter to Gov. Tim Walz (Jan. 24, 2026), reproduced at New York Times, https://www.nytimes.com/interactive/2026/01/24/us/pam-bondi-walz-doc.html ..........................................................................................14

Reid J. Epstein & Nick Corasaniti, *Trump, in an Escalation, Calls for Republicans to 'Nationalize' Elections*, N.Y. Times, Feb. 2, 2026 ...................14

Sarah N. Lynch, Justice Dept. Close to Finalizing Deal to Hand Over States' Voter Roll Data to Homeland Security, Sources Say, CBS News, Mar. 26, 2026, https://perma.cc/T66C-RYR;.........................................37

Sarah N. Lynch, *Justice Dept. Close to Finalizing Deal to Hand Over States' Voter Roll Data to Homeland Security, Sources Say*, CBS News (updated Mar. 26, 2026), https://perma.cc/89QF-UP3M .........................10



Appellate Case: 26-2679 Page: 14 Date Filed: 09/17/2026 Entry ID: 5684814

Sarah N. Lynch, *US Justice Dept Considers Handing over Voter Roll Data for Criminal Probes, Documents Show*, Reuters, Sept. 9, 2025, https://www.reuters.com/legal/government/us-justice-dept-considers-handing-over-voter-roll-data-criminal-probes-documents-2025-09-09 ....................................................................................11



Appellate Case: 26-2679 Page: 15 Date Filed: 09/17/2026 Entry ID: 5684814

## JURISDICTIONAL STATEMENT

The jurisdictional summary provided in Appellant's brief is complete and correct. Intervenor-Defendants/Appellees do not dispute this Court's jurisdiction over the appeal.



Appellate Case: 26-2679 Page: 16 Date Filed: 09/17/2026 Entry ID: 5684814

## STATEMENT OF THE ISSUES

**I.** Whether Minnesota's SVRL, which is a database created by a state's chief election official, is a "record[] . . . which come[s] into [their] possession" within the meaning of Title III of the Civil Rights Act of 1960, 52 U.S.C. § 20701.

- Apposite cases: *United States v. Benson*, 179 F.4th 470 (6th Cir. 2026); *United States v. Benson*, 819 F. Supp. 3d 753 (W.D. Mich. 2026); *Honeycutt v. United States*, 581 U.S. 443 (2017); *Minn. Telecom All. v. FCC*, 175 F.4th 905 (8th Cir. 2026).
- Apposite statutes: 52 U.S.C. §§ 20701, 20702; 52 U.S.C. §§ 20507(a)(4), 21083(a)(4).

**II.** Whether the Federal Rules of Civil Procedure apply where nothing in the text of the Civil Rights Act of 1960 ("CRA") exempts this matter from the Federal Rules of Civil Procedure.

- Apposite cases: *United States v. Powell*, 379 U.S. 48 (1964); *United States v. Weber*, 816 F. Supp. 3d 1168 (C.D. Cal. 2026); *United States v. Bd. of Elections of N.Y.*, No. 25-cv-1338, 2026 WL 1999921 (N.D.N.Y. July 10, 2026); *United States v. Oregon*, 828 F. Supp. 3d 1092 (D. Or. 2026).
- Apposite statutes and rules: 52 U.S.C. § 20705; Fed. R. Civ. P. 1; Fed. R. Civ. P. 81(a)(5).

**III.** Whether the United States can obtain a covered record under Title III of the CRA in the absence of a "demand in writing by the Attorney General or his representative . . . contain[ing] a statement of the basis . . . therefor," 52 U.S.C. § 20703.

- Apposite cases: *United States v. Benson*, 179 F.4th 470 (6th Cir. 2026); *Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962); *United States v. Galvin*, 830 F. Supp. 3d 122 (D. Mass. 2026); *United States v. Scanlan*, No. 25-cv-371, 2026 WL 1864054 (D.N.H. June 29, 2026) appeal docketed, No. 26-1783 (1st Cir. July 7, 2026).
- Apposite statutes: 52 U.S.C. §§ 20703, 20705.

**IV.** Whether the United States can obtain a covered record under Title III of the CRA where its written "statement of the basis and the purpose therefor," 52 U.S.C. § 20703, is invalid or pretextual.

- Apposite cases: *United States v. Oregon*, 828 F. Supp. 3d 1092 (D. Or. 2026); *United States v. Weber*, 816 F. Supp. 3d 1168 (C.D. Cal. 2026); *United States v. Bellows*, No. 25-cv-468, 2026 WL 1430481 (D. Me. May 21, 2026); *United States v. Schmidt*, No. 25-cv-01481, 2026 WL 1850016 (W.D. Pa. June 27, 2026).
- Apposite statutes: 52 U.S.C. § 20703; 52 U.S.C. § 21083(a)(4), (b)(4).

**V.** Whether other legal protections bar production of an unredacted SVRL containing sensitive personal information.

- Apposite cases: *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331 (4th Cir. 2012); *Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36 (1st Cir. 2024); *United States v. Weber*, 816 F. Supp. 3d 1168 (C.D. Cal. 2026); *TCI of N. Dakota, Inc. v. Schriock Holding Co.*, 11 F.3d 812 (8th Cir. 1993).
- Apposite statutes: 5 U.S.C. § 552a(e)(7); 52 U.S.C. §§ 20703, 20704; Minn. Stat. § 201.091, subd. 9.


Appellate Case: 26-2679 Page: 18 Date Filed: 09/17/2026 Entry ID: 5684814

## STATEMENT OF THE CASE

### I. STATUTORY BACKGROUND: TITLE III OF THE CIVIL RIGHTS ACT OF 1960.

Congress enacted Title III of the CRA to stop states in the era of Jim Crow from denying Black citizens the ability to register to vote. *See, e.g.*, H.R. Rep. No. 86-956 (1959) (indicating the purpose of Title III "is to provide a more effective protection of the right of all qualified citizens to vote without discrimination on account of race"). The CRA followed the Civil Rights Act of 1957, Congress's first attempt since Reconstruction to enforce the voting guarantees of the Fourteenth and Fifteenth Amendments. *United States v. Mayton*, 335 F.2d 153, 159 (5th Cir. 1964).

With Title III, Congress sought to empower DOJ "to require the production of [election] records during any investigation it conducts as to complaints that qualified persons have been denied the right to vote in violation of Federal law." *United States v. Oregon*, 828 F. Supp. 3d 1092, 1097 (D. Or. 2026). The statute requires that state and local elections officials retain and preserve "all records and papers which come into [their] possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election." 52 U.S.C. § 20701. These records "shall, upon demand in writing by the Attorney General or his representative . . ., be made available for inspection, reproduction, and copying at the principal office of [the] custodian." 52 U.S.C. § 20703.

While Congress intended that the Attorney General investigate violations of constitutional rights, some members of Congress, including Florida Congressman William Cramer, were also concerned with DOJ's use of the powers granted by Title III for "fishing expedition[s]." 106 Cong. Rec. 5326 (1960). To address these concerns, Congress adopted Representative Cramer's amendment to Title III, which added a requirement that the Attorney General's demand for records include a written "statement of the basis and the purpose therefor." 52 U.S.C. § 20703; *see also* 106 Cong. Rec. 5326. And, it expressly authorized judicial review over such statements of the basis and purpose by specifying that "[t]he United States district court for the district in which a demand is made pursuant to section 20703 of this title, or in which a record or paper so demanded is located, shall have jurisdiction by appropriate process to compel the production of such record or paper." 52 U.S.C. § 20705.

The federal government then used Title III as intended, to investigate jurisdictions that had effectively denied Black Americans the right to register to vote. *See, e.g.*, *Alabama v. United States*, 304 F.2d 583, 585–86 (5th Cir. 1962) (registration records subject to the CRA showed that discriminatory registration practices led to less than 10% of Black citizens being registered to vote while nearly 100% of white citizens were registered), *aff'd* 371 U.S. 37 (1962); *see also United States v. Cartwright*, 230 F. Supp. 873, 875 (M.D. Ala. 1964) (reviewing data from

an investigation pursuant to Title III which revealed that voting registrars engaged in racially discriminatory practices resulting in 89% of white citizens being registered to vote but only 7.5% of Black citizens being registered). And in conducting those investigations, DOJ adhered to the statutory requirement to set forth in writing "the basis and the purpose" for its records demands, 52 U.S.C. § 20703—that is, the factual basis for why DOJ suspected a potential legal violation as well as its investigatory purpose of how the requested records would bear upon that suspicion. *See, e.g.*, *Kennedy v. Lynd* (*Lynd*), 306 F.2d 222, 229 n.6 (5th Cir. 1962); *In re Coleman*, 208 F. Supp. 199, 199–200 (S.D. Miss. 1962), *aff'd sub nom. Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963).

This robust use of Title III of the CRA was short lived. Only a few years later, Congress passed the Civil Rights Act of 1964, which outlawed racial segregation. Then, in 1965, Congress passed the Voting Rights Act, which established broad new voter protections, eliminated literacy tests, and enfranchised millions of Black citizens. Because Congress enacted more effective voting rights laws, federal court assessment of Title III has largely been silent since 1965. Until the past year, all jurisprudence analyzing the CRA arose during the 1960s in former Confederate states and pertained to investigations into state and local officials unlawfully denying Black citizens their right to register to vote.


Appellate Case: 26-2679 Page: 21 Date Filed: 09/17/2026 Entry ID: 5684814

## II. FACTUAL BACKGROUND

### A. The Department of Justice's Demand for Minnesota's Unredacted Voter File.

In May 2025, Appellant, through DOJ, began an unprecedented campaign to use Title III to demand sensitive personal data of registered voters throughout the United States—DOJ sent letters to election officials in at least 40 states, making escalating demands for production of statewide voter registration databases, with plans to gather data from all 50 states.[1]

Minnesota's Secretary of State Steve Simon (the "Secretary") received the first letter from DOJ on June 25, 2025, requesting "information regarding the State's Help America Vote Act ("HAVA") compliance."[2] This letter contained 15 requests for information—including a request for a copy of "Minnesota's current statewide voter registration list"—which DOJ asked to be provided within 30 days.[3]

On August 13, 2025, DOJ sent an additional letter to the Secretary demanding an electronic copy of Minnesota's entire SVRL ("August 13 Letter").[4] DOJ specified that it was seeking an unredacted electronic copy of the SVRL that must "include all

---

[1] *See* Kaylie Martinez-Ochoa, Eileen O'Connor & Patrick Berry, Brennan Ctr. for Just., Tracker of Justice Department Requests for Voter Information (updated Aug. 24, 2026), https://www.brennancenter.org/our-work/research-reports/tracker-justice-department-requests-voter-information.

[2] App. 50; R. Doc. 66-1 at 1.

[3] App. 50–51; R. Doc. 66-1 at 1–2.

[4] App. 87–88; R. Doc. 66-2 at 1–2.



Appellate Case: 26-2679 Page: 22 Date Filed: 09/17/2026 Entry ID: 5684814

fields, including all identifiers, including the registrant's full name, date of birth, residential address, and the last four numbers of each registrant's social security number and the full state driver's license number . . . ."[5]

DOJ cited HAVA and the CRA as authority for its records request and stated that "the purpose of the request is to ascertain Minnesota's compliance with the list maintenance requirements of HAVA under 52 U.S.C. § 21083(b)(4)(A) and (B)," but did not provide further explanation or refer to any alleged compliance deficiencies by Minnesota with respect to the cited requirements of HAVA.[6] DOJ requested that this full and unredacted copy of Minnesota's SVRL be provided within seven days.[7]

On August 21, 2025, the Secretary's office responded to the August 13 Letter with a "non-exhaustive list of concerns with DOJ's request" for a complete and unredacted SVRL, including that Minnesota law prohibits the Secretary "from providing a voter's date of birth or any portion of their Social Security Number, driver's license number, [or] state identification card number . . . in response to a request for public inspection. Minn. Stat. § 201.091, subd. 9."[8] The Secretary's

---

[5] App. 88; R. Doc. 66-2 at 2.

[6] App. 87–88; R. Doc. 66-2 at 1–2; Add. 11–12; R. Doc. 210 at 11–12.

[7] App. 88; R. Doc. 66-2 at 2.

[8] App. 89; R. Doc. 66-2 at 3.



Appellate Case: 26-2679 Page: 23 Date Filed: 09/17/2026 Entry ID: 5684814

office also explained why DOJ had not "provided adequate justification for amassing highly sensitive information on millions of Minnesotans" and why DOJ had not "provided adequate assurances that it will treat the data appropriately," and noted that Minnesota has a publicly available voter list, which does not include Minnesota voters' sensitive personal identifiers.[9] The Secretary's office also stated that it "would appreciate the opportunity to discuss the matter further with DOJ in order to determine whether there are ways to address DOJ's concerns without unnecessarily disclosing private data on millions of Minnesotans."[10]

DOJ apparently never responded to the Secretary's August 21 letter and never provided any additional legal arguments to support its position or address the Secretary's objections. Instead, on September 25, 2025, the United States sued the Secretary in this action (and has brought similar lawsuits in 29 other states and the District of Columbia).[11]

### B. The United States Seeks to Unlawfully Construct a National Voter Database.

DOJ's requests for private, sensitive voter data from Minnesota and other states are part of the federal government's unprecedented attempts to intrude upon state election administration, including in connection with novel efforts to construct

---

[9] App. 90–94; R. Doc. 66-2 at 4–8.

[10] App. 94; R. Doc. 66-2 at 8.

[11] *See* supra note 1.



Appellate Case: 26-2679 Page: 24 Date Filed: 09/17/2026 Entry ID: 5684814

a national voter database, and to otherwise use untested forms of database analysis to scrutinize state voter rolls and challenge voters' eligibility. According to this reporting, DOJ employees "have been clear that they are interested in a central, federal database of voter information."[12] Within months of the new Administration taking office, DOJ officials asked staffers from the new "Department of Governmental Efficiency" (DOGE) to identify supposed noncitizens in state voter rolls by matching voter data with data from the Social Security Administration (SSA), efforts which have incorrectly flagged numerous U.S. citizens as ineligible to vote.[13]

DOJ has been coordinating these novel efforts with the federal Department of Homeland Security ("DHS"), according to reported statements from both agencies and DOJ's own admissions.[14] One article extensively quoted a former lawyer from DOJ's Civil Rights Division describing DOJ's aims in this case and others like it:

---

[12] Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. Times, Sept. 9, 2025, https://www.nytimes.com/2025/09/09/us/politics/trump-voter-registration-data.html.

[13] *E.g.*, Jude Joffe-Block, *Trump's SAVE Tool Is Looking for Noncitizen Voters. But It's Flagging U.S. Citizens Too*, NPR, Dec. 10, 2025, https://perma.cc/6P7X-NZXL; Miles Parks & Jude Joffe-Block, *Trump's DOJ Focuses in on Voter Fraud, with a Murky Assist from DOGE*, NPR, May 22, 2025, https://perma.cc/6QPB-NLZ8.

[14] *See* Sarah N. Lynch, *Justice Dept. Close to Finalizing Deal to Hand Over States' Voter Roll Data to Homeland Security, Sources Say*, CBS News (updated Mar. 26, 2026), https://perma.cc/89QF-UP3M; Jonathan Shorman, *DOJ is Sharing State Voter Roll Lists with Homeland Security*, Stateline, Sept. 12, 2025,


Appellate Case: 26-2679 Page: 25 Date Filed: 09/17/2026 Entry ID: 5684814

> We were tasked with obtaining states' voter rolls, by suing them if necessary. Leadership said they had a DOGE person who could go through all the data and compare it to the Department of Homeland Security data and Social Security data. . . . I had never before told an opposing party, Hey, I want this information and I'm saying I want it for this reason, but I actually know it's going to be used for these other reasons. That was dishonest. It felt like a perversion of the role of the Civil Rights Division.[15]

Administration officials have also been working with outside advocacy groups to misuse voters' sensitive personal data. For example, as detailed in a federal court filing on behalf of the SSA:

> [I]n March 2025, a political advocacy group contacted two members of SSA's DOGE Team with a request to analyze state voter rolls that the advocacy group had acquired. The advocacy group's stated aim was to find evidence of voter fraud and to overturn election results in certain States. In connection with these communications, one of the DOGE team members signed a "Voter Data Agreement," in his capacity as an SSA employee, with the advocacy group. He sent the executed agreement to the advocacy group on March 24, 2025.

---

https://stateline.org/2025/09/12/doj-is-sharing-state-voter-roll-lists-with-homeland-security; Sarah N. Lynch, *US Justice Dept Considers Handing over Voter Roll Data for Criminal Probes, Documents Show*, Reuters, Sept. 9, 2025, https://www.reuters.com/legal/government/us-justice-dept-considers-handing-over-voter-roll-data-criminal-probes-documents-2025-09-09.

[15] Emily Bazelon & Rachel Poser, *The Unraveling of the Justice Department*, N.Y. Times Magazine, Nov. 16, 2025, https://www.nytimes.com/interactive/2025/11/16/magazine/trump-justice-department-staff-attorneys.html.

Notice of Corr. to the Rec. at 5, *Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Soc. Sec. Admin.*, No. 25-cv-596, Dkt. No. 197 (D. Md. Jan. 16, 2026).[16] The filing, which does not specify the terms of the "Voter Data Agreement" or the activities these federal government actors or others undertook pursuant to it, also indicates that, around the same period, DOGE actors shared unknown amounts of Social Security data on an unapproved third-party server, in a "manner [that] is outside SSA's security protocols." *Id.* at 6

Additional government documents indicate how the United States ultimately plans to use voters' sensitive personal data: to assert control over voting eligibility in the states, to order the disenfranchisement of voters, and potentially to contest the results of state-run elections.

In particular, the United States has, in connection with the demands for voter data, asked states to execute a memorandum of understanding (MOU).[17] The terms of the MOU purport to vest the United States with substantial new authority to identify supposedly ineligible voters on state voter rolls and to compel states to

---

[16] *See also* Kyle Cheney, *Trump Administration Concedes DOGE Team May Have Misused Social Security Data*, POLITICO, Jan. 20, 2026, https://www.politico.com/news/2026/01/20/trump-musk-doge-social-security-00737245.

[17] R. Doc. 87-1; Copies of the MOU provided to many states are aggregated and posted in Martinez-Ochoa, O'Connor, & Berry, *Tracker of Justice Department Requests*, *supra* n.2.


Appellate Case: 26-2679 Page: 27 Date Filed: 09/17/2026 Entry ID: 5684814

remove these voters from the rolls, depriving them of the franchise. Specifically, under the MOU's terms, federal officials may take custody of the voter rolls, identify supposed "ineligible voters," and then compel states to "remov[e]" these voters "within forty-five (45) days" and then resubmit their voter lists for additional analysis. *Id*. at 5. These removals are purportedly required by the MOU without accounting for any of the relevant procedural protections afforded by the National Voter Registration Act ("NVRA"), which, among other protections, requires certain voters to be afforded a much longer notice-and-waiting-period process prior to removal and bars certain systematic removal programs within 90 days of an election, 52 U.S.C. § 20507.[18] The MOU would thereby turn states' own voter rolls into a tool for unlawfully and improperly mass-challenging voters and interfering with the democratic process in the states.

The actions of the President and other high officials also highlight the Administration's impermissible aims. As on example, on January 24, 2026, then-U.S. Attorney General Pam Bondi issued a letter to Minnesota Governor Tim Walz tying "Operation Metro Surge," which involves unprecedented and well-documented actions by the U.S. Immigration and Customs Enforcement ("ICE")

---

[18] *See also* Jonathan Shorman, *Trump's DOJ Offers States 'Confidential' Deal to Wipe Voters Flagged by Feds*, STATELINE, Dec. 18, 2025, https://stateline.org/2025/12/18/trumps-doj-offers-states-confidential-deal-to-wipe-voters-flagged-by-feds-as-ineligible/.


Appellate Case: 26-2679 Page: 28 Date Filed: 09/17/2026 Entry ID: 5684814

agency against the civilian population in this state, to, among other things, Minnesota's refusal to turn over its unredacted voter rolls.[19]

Just weeks later, President Trump announced his desire to "nationalize" elections in certain states. "We should take over the voting, the voting in at least many—15 places," he said, "[t]he Republicans ought to nationalize the voting."[20] And the next month, the President issued an executive order purporting to require the creation of a national voter registration list, *see* Exec. Order No. 14,399, 91 Fed. Reg. 17125 (Mar. 31, 2026). The order calls for DHS to "compile and transmit to the chief election official of each State a list of individuals confirmed to be United States citizens" who reside in the state and will be over eighteen at the time of the next federal election. *Id.* § 2(a), at 17125. DHS is to use "Federal citizenship and naturalization records, SSA records, SAVE data, and other relevant Federal databases," in doing so. *Id.* The order also directs the United States Postal Service (USPS) to provide each state with a list of voters "who are enrolled with the USPS . . . for mail-in or absentee ballots," and, remarkably, to refuse to transmit a ballot

---

[19] Pam Bondi, Letter to Gov. Tim Walz (Jan. 24, 2026) ("Bondi Letter"), reproduced at New York Times, https://www.nytimes.com/interactive/2026/01/24/us/pam-bondi-walz-doc.html (last accessed Sept. 3, 2026).

[20] Reid J. Epstein & Nick Corasaniti, *Trump, in an Escalation, Calls for Republicans to 'Nationalize' Elections*, N.Y. Times, Feb. 2, 2026, https://www.nytimes.com/2026/02/02/us/politics/trump-nationalize-elections.html.

"from any individual unless those individuals have been enrolled on a State-specific list." *Id.* § 3(b)(C)(iii)–(iv), at 17126.

Additional recent statements and disclosures have confirmed that it plans to use Minnesota's data in collaboration with DHS, rather than for any purpose related to HAVA.[21] Changed For example, in a memorandum from its Office of Legal Counsel, DOJ explained in May 2026 that its efforts to seek statewide voter lists come "[i]n response to the President's order to identify those who may be voting illegally," and that DOJ plans "to share the lists with Homeland Security Investigations . . . or another unit within DHS." *See* Mem. Op. for the Assistant Att'y Gen., Civ. Rts. Div. dated May 12, 2026 (OLC Memo) at 1 (stating the memorandum discusses whether DOJ "may share such lists with DHS for the purpose of identifying illegal aliens who are ineligible to vote"). Notably, DHS plays no role in enforcing HAVA.

Internal documents recently produced by DOJ in response to Freedom of Information Act (FOIA) requests similarly show that DOJ entered into an agreement with DHS in July 2025 to run state voter lists through the Systemic Alien

[21] *See CREW Sues DOJ for Failing to Produce Records on Voter Data Collection*, Citizens for Resp. & Ethics in Wash. (published Dec. 19, 2025), https://www.citizensforethics.org/legal-action/lawsuits/crew-sues-doj-for-failing-to-produce-records-on-voter-data-collection/ [https://perma.cc/2BB3-WMN2] (last accessed Aug. 20, 2026).


Appellate Case: 26-2679 Page: 30 Date Filed: 09/17/2026 Entry ID: 5684814

Verification for Entitlements (SAVE) program.[22] Notwithstanding the NVRA and HAVA's delegation of authority to the States—not the federal government—to conduct list maintenance, these documents also reflect DOJ lawyers' intention to "inform" states that their "voter lists should be run against [SAVE] . . . as part of their list maintenance responsibilities under the NVRA and HAVA."[23] The documents also indicate that DOJ contemplated using the data for criminal enforcement, noting "Crim Section may have some uses for the data . . . once we get results from SAVE."[24]

These are not the purposes that the United States disclosed to Minnesota or has advanced in this litigation. And the FOIA documents make clear that DOJ's silence on these additional uses was deliberate: DOJ lawyers simultaneously took the position in internal discussions that the Department had no obligation "to give the states information about what we are going to do with the data," and remarkably, "No judge will have authority to limit us beyond a promise of Federal law

---

[22] *See id.*, Apr. 14, 2026, Records: Part 1, CREW v. DOJ-CRT-00828 [https://perma.cc/CQU6-68RR].

[23] *Id.*

[24] *Id.*, Apr. 14, 2026, Records, Part 2, CREW v. DOJ-CRT-001182 [https://perma.cc/T9B9-XJQW].


Appellate Case: 26-2679 Page: 31 Date Filed: 09/17/2026 Entry ID: 5684814

compliance."[25] This array of judicially noticeable information shows how DOJ knowingly shirked its statutory obligation to disclose its intended uses.

## III. PROCEDURAL BACKGROUND

On September 25, 2025, Appellant filed suit in the United States District Court for the District of Minnesota seeking to compel Minnesota to turn over the unredacted voter file.[26] Like numerous courts[27] throughout the United States, the

---

[25] *Id.*

[26] App. 33; R. Doc. 1.

[27] *See United States v. Benson*, 179 F.4th 470 (6th Cir. 2026); *United States v. Amore*, 831 F. Supp. 3d 149 (D.R.I. 2026), *appeal docketed*, No. 26-1665 (1st Cir. June 9, 2026); *United States v. Galvin*, 830 F. Supp. 3d 122 (D. Mass. 2026); *United States v. Benson*, 819 F. Supp. 3d 753 (W.D. Mich. 2026), *aff'd*, 179 F.4th 470 (6th Cir. 2026); *Oregon*, 828 F. Supp. 3d 1092; *United States v. Weber*, 816 F. Supp. 3d 1168 (C.D. Cal. 2026); *United States v. Aguilar*, No. 25-cv-00728, 2026 WL 2364502, at *1 (D. Nev. Aug. 14, 2026); *United States v. Evans*, No. cv 25-4403, 2026 WL 2267774, at *1 (D.D.C. Aug. 6, 2026); *United States v. Griswold*, No. 25-cv-3967, 2026 WL 2235374, at *5 (D. Colo. Aug. 3, 2026), *appeal docketed*, No. 26-1326 (10th Cir. Aug. 18, 2026); *United States v. Matthews*, No. 25-cv-3398, 2026 WL 2212877 (C.D. Ill. July 31, 2026); *United States v. Caldwell*, No. 26-cv-2025, 2026 WL 2186515 (D.N.J. July 29, 2026) (unpublished); *United States v. Adams*, No. 26-cv-00019, 2026 WL 2123871 (E.D. Ky. July 23, 2026); *United States v. Thomas*, No. 26-cv-21, 2026 WL 2070437 (D. Conn. July 17, 2026), *appeal docketed*, No. 26-2064 (2d Cir. July 28, 2026); *United States v. Oliver*, No. 25-cv-01193, 2026 WL 2031479 (D.N.M. July 14, 2026); *United States v. Koski*, No. 26CV42, 2026 WL 2032532 (E.D. Va. July 14, 2026); *United States v. Warner*, No. 26-cv-156, 2026 WL 2018877 (S.D.W.V. July 13, 2026); *United States v. Bd. of Elections of N.Y.*, No. 25-cv-1338, 2026 WL 1999921 (N.D.N.Y. July 10, 2026); *United States v. Scanlan*, No. 25-cv-371, 2026 WL 1864054 (D.N.H. June 29, 2026), *appeal docketed*, No. 26-1783 (1st Cir. July 7, 2026); *United States v. Schmidt*, No. 25-cv-01481, 2026 WL 1850016 (W.D. Pa. June 27, 2026); *United States v. DeMarinis*, No. SAG-25-3934, 2026 WL 1780586 (D. Md. June 18, 2026); *United States v. Wis. Elections Comm'n*, 833 F. Supp. 3d 949 (W.D. Wis. 2026); *United States v. Bellows*,

district court issued an order and opinion granting the Defendants' and Intervenor Defendants' Motions to Dismiss and denying Plaintiff's Motions for Order to Compel Production of Federal Election Records on August 17, 2026.

## **SUMMARY OF THE ARGUMENT**

Appellant's CRA claim is legally deficient, and there are multiple bases on which this Court should affirm.

*First*, the SVRL is not a record covered by Title III. The statute reaches only "records and papers which come into [an official's] possession." 52 U.S.C. § 20701. Those words carry their ordinary meaning — to acquire, obtain, or receive from an external source—and a database the Secretary creates, populates, and updates is not such a record or paper under the statute. The statutory scheme forecloses Appellant's reading for a second reason: Title III criminalizes altering a covered record, 52 U.S.C. § 20702, while the NVRA and HAVA affirmatively command officials to update the voter list, 52 U.S.C. §§ 20507(a)(4), 21083(a)(4). Treating the SVRL as a covered record would criminalize the very list maintenance that federal law requires.

---

No. 25-cv-468, 2026 WL 1430481 (D. Me. May 21, 2026), *appeal docketed*, No. 26-1676 (1st Cir. June 15, 2026); *United States v. Fontes*, 832 F. Supp. 3d 944 (D. Ariz. 2026).



Appellate Case: 26-2679 Page: 33 Date Filed: 09/17/2026 Entry ID: 5684814

*Second*, even if the SVRL were otherwise covered, DOJ's demand fails on its face to comply with the CRA's substantive requirements, which require a statement in writing of "the basis and the purpose" for the demand. 52 U.S.C. § 20703. These are conceptually distinct requirements, each of which must independently be satisfied. DOJ's letters fail this statutory requirement. They identify no factual basis for suspecting that Minnesota's list maintenance violates HAVA—the Complaint alleges no deficiency at all—and thereby inverts the statutory framework, seeking the data first to determine whether a violation exists. That is exactly the type of fishing expedition Congress banned by enacting the "basis and purpose" requirement in the first place. Separately, DOJ's stated "purpose" also fails, because the HAVA provisions DOJ invokes govern the contents of the mail voter registration form and whether the State maintains an adequate system of file maintenance, and an unredacted voter file cannot establish non-compliance with either requirement. Moreover, even if DOJ's stated purpose was otherwise sufficient, it is pretextual. DOJ has conceded that it will share the collected data with DHS, and the former Attorney General's letter to Minnesota's Governor tied the demand for the State's voter roll to immigration enforcement. But immigration enforcement purposes are not mentioned anywhere in DOJ's letters to the Secretary.

Appellant cannot evade these defects by arguing that this is a "special statutory proceeding" where the Federal Rules of Civil Procedure do not apply. That


Appellate Case: 26-2679 Page: 34 Date Filed: 09/17/2026 Entry ID: 5684814

is both wrong as a matter of statutory text and binding precedent, and also irrelevant, because even in a more truncated procedural format, the total failure to comply with the CRA's black-letter requirements would be fatal.

*Third*, even if DOJ had otherwise adhered to the CRA, the unredacted SVRL cannot be lawfully compelled. Courts construing the NVRA's parallel "all records" language have uniformly permitted, and sometimes required, redaction of voters' sensitive identifiers, because unredacted disclosure and its corresponding chilling effect impose an intolerable burden on the right to vote. Moreover, the Privacy Act separately forbids maintaining records describing how individuals exercise First Amendment rights, 5 U.S.C. § 552a(e)(7), and the government's decades-old system-of-records notice supplies nothing approaching adequate notice for a collection of this scale. Because Appellant seeks *only* an unredacted list, the claim as pleaded fails.

## STANDARD OF REVIEW

This Court reviews de novo the district court's grant of a motion to dismiss under Rule 12(b)(6), as well as the court's interpretation of Title III. *Cook v. George's, Inc.*, 952 F.3d 935, 938 (8th Cir. 2020); *Minn. Telecom All. v. FCC*, 175 F.4th 905, 921 (8th Cir. 2026). This Court "may affirm on any ground supported by the record." *Brown v. St. Louis Police Dep't*, 691 F.2d 393, 396–97 (8th Cir. 1982). Further, "[c]ourts may consider matters incorporated by reference or integral to the


Appellate Case: 26-2679 Page: 35 Date Filed: 09/17/2026 Entry ID: 5684814

claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned; without converting a motion to dismiss under Rule 12(b)(6) into one for summary judgment." *Roberson v. Dakota Boys & Girls Ranch*, 42 F.4th 924, 928 (8th Cir. 2022).

## ARGUMENT

### I. THE SVRL FALLS OUTSIDE TITLE III BECAUSE IT IS NOT A RECORD THAT "COMES INTO" AN ELECTION OFFICIAL'S POSSESSION.

This Court can affirm on the basis the district court chose. Title III reaches only "records and papers which come into [an official's] possession." 52 U.S.C. § 20701. Minnesota's SVRL is not such a record. The Secretary does not receive the SVRL from anyone. His office builds it, holds it, and rewrites it regularly—adding new registrants, removing those who move or die, and correcting errors as federal law commands. *See* 52 U.S.C. § 20507(a)(4); *id*. § 21083(a)(4). A database an office creates and continuously updates of its own accord is not covered by Title III's plain text. That is why the district court dismissed this suit,[28] and why the Sixth Circuit and every other court to construe the phrase has read it the same way. *See United*

[28] *See* Add.20–21; App.139–140; R.Doc.210, at 20–21.


Appellate Case: 26-2679 Page: 36 Date Filed: 09/17/2026 Entry ID: 5684814

*States v. Benson*, 179 F.4th 470, 478–81 (6th Cir. 2026) ("*Benson II*"), *reh'g en banc denied*, No. 26-1225, 2026 WL 2364306 (6th Cir. Aug. 14, 2026).[29]

### A. To "come into" possession means to acquire a record from an external source—and the Secretary acquires the SVRL from no one.

Interpretation begins with the statute's text, and where the text is plain, that is where it ends. *Minn. Telecom All. v. FCC*, 175 F.4th 905, 921 (8th Cir. 2026); *United States v. Cacioppo*, 460 F.3d 1012, 1016 (8th Cir. 2006). The relevant text here does

---

[29] *United States v. Aguilar*, No. 25-cv-728, 2026 WL 2364502, at *5 (D. Nev. Aug. 14, 2026); *United States v. Evans*, No. 25-4403, 2026 WL 2267774, at *5, *11 (D.D.C. Aug. 6, 2026); *United States v. Griswold*, No. 25-cv-3967, 2026 WL 2235374, at *4–5 (D. Colo. Aug. 3, 2026); *United States v. Matthews*, No. 25-cv-3398, 2026 WL 2212877, at *3–4 (C.D. Ill. July 31, 2026); *United States v. Caldwell*, No. 26-cv-2025, 2026 WL 2186515, at *6–8 (D.N.J. July 29, 2026); *United States v. Adams*, No. 3:26-cv-00019, 2026 WL 2123871, at *4–5 (E.D. Ky. July 23, 2026); *United States v. Thomas*, No. 3:26-cv-21, 2026 WL 2070437, at *7 (D. Conn. July 17, 2026); *United States v. Koski*, No. 3:26-cv-42, 2026 WL 2032532, at *6 (E.D. Va. July 14, 2026); *United States v. Bd. of Elections of N.Y.*, No. 1:25-cv-1338, 2026 WL 1999921, at *11 (N.D.N.Y. July 10, 2026); United *States v. Scanlan*, No. 25-cv-371, 2026 WL 1864054, at *6 (D.N.H. June 29, 2026); *United States v. Schmidt*, No. 2:25-cv-01481, 2026 WL 1850016, at *2 (W.D. Pa. June 27, 2026); *United States v. DeMarinis*, No. SAG-25-3934, 2026 WL 1780586, at *5 (D. Md. June 18, 2026); *United States v. Wisconsin Elections Comm'n*, 833 F. Supp. 3d 949, 954 (W.D. Wis. 2026); *United States v. Bellows*, No. 1:25-cv-468, 2026 WL 1430481, at *7 (D. Me. May 21, 2026); *United States v. Fontes*, No. CV-26-00066, 2026 WL 1177244, at *5 (D. Ariz. Apr. 28, 2026); *United States v. Benson*, 819 F. Supp. 3d 753, 770 (W.D. Mich. 2026). The Department of Justice's cases against "Washington, DC and 22 states – Arizona, California, Colorado, Connecticut, Illinois, Kentucky, Maine, Maryland, Massachusetts, Michigan, Minnesota, Nevada, New Hampshire, New Jersey, New Mexico, New York, Oregon, Pennsylvania, Rhode Island, Virginia, West Virginia, and Wisconsin – have been dismissed." Martinez-Ochoa, Tracker of Justice Department Requests for Voter Information, *supra* note 1.


Appellate Case: 26-2679 Page: 37 Date Filed: 09/17/2026 Entry ID: 5684814

not speak of records "in" an official's possession; it speaks of records that "come into" his possession. 52 U.S.C. § 20701. Those added words carry their ordinary meaning at the time of enactment: around the time Congress enacted Title III, to "come into . . . possession" meant to "acquire," "obtain," or "receive." *Benson II*, 179 F.4th at 478; *accord Honeycutt v. United States*, 581 U.S. 443, 449 (2017) (defining "obtain" as "to come into possession of" (citation omitted)). A record therefore "comes into" an official's possession only when it arrives from an external source; Congress "has consistently employed the phrase 'comes into possession' to describe the process by which a person receives something from an external source." *United States v. Scanlan*, No. 25-cv-371, 2026 WL 1864054, at *5 (D.N.H. June 29, 2026), appeal docketed, No. 26-1783 (1st Cir. July 7, 2026).

Ordinary usage confirms the point. As the court below held, adopting the Sixth Circuit's reasoning, "an ordinary English speaker would not say that she has come into possession of something that she created, established, and maintained." *Benson II*, 179 F.4th at 478; App.138. One does not "come into possession" of the meal one cooks or the notes one writes—or of a painting one paints: "the Mona Lisa 'came into the possession' of the Louvre around 1797; one would not say that the painting 'came into the possession' of Leonardo da Vinci when he completed it around 1517." *United States v. Evans*, No. 25-4403, 2026 WL 2267774, at *6 (D.D.C. Aug. 6, 2026). The SVRL is Minnesota's own creation in exactly that sense: the state's


Appellate Case: 26-2679 Page: 38 Date Filed: 09/17/2026 Entry ID: 5684814

officials generate it, populate it, and keep it current. It is not handed to the Secretary; it is the product of his office's own ongoing work. 52 U.S.C. § 21083(a)(1)(A).

The company the phrase keeps points the same way. The covered records are those "relating to any application, registration, payment of poll tax, or other act requisite to voting." 52 U.S.C. § 20701. Each item on that list is "something that the voter submits or does as part of the registration process," and thus a record "that election officials *receive*, rather than *create*." *United States v. Benson*, 819 F. Supp. 3d 753, 768–69 (W.D. Mich. 2026) ("*Benson I*"), *aff'd*, 179 F.4th 470 (6th Cir. 2026); *accord United States v. Fontes*, 832 F. Supp. 3d 944, 950 (D. Ariz. 2026); *United States v. Matthews*, No. 25-cv-3398, 2026 WL 2212877, at *3 (C.D. Ill. July 31, 2026). The SVRL—a comprehensive, state-generated database—is a stranger to that list.

Congress's word choice seals the question. Reading Title III to reach whatever an official happens to possess would replace "'all records and papers *which come into* h[is] possession'" with "all records and papers which *they possess*," rendering "come into" surplusage. *Benson II*, 179 F.4th at 480 (citation omitted). And when Congress wanted to reach records without regard to their source, it knew how: the National Voter Registration Act ("NVRA") requires disclosure of "all records concerning the implementation of programs and activities" for list maintenance, 52 U.S.C. § 20507(i)(1), with no "come into possession" qualifier at all. Congress's use


Appellate Case: 26-2679 Page: 39 Date Filed: 09/17/2026 Entry ID: 5684814

of "narrower language" in Title III must be given effect. *Benson II*, 179 F.4th at 480; *United States v. Koski*, No. 26-cv-42, 2026 WL 2032532, at *5 (E.D. Va. July 14, 2026).

Appellant's central answer is that "come into his possession" fixes only *when* possession began—a "temporal" marker—rather than distinguishing records acquired externally from those generated internally.[30] Courts have considered and rejected that reading. The phrase "says nothing about when or how" an official acquires a record; "[t]he time at which or the character of the source from which a record is acquired . . . do not define the phrase 'come into possession." *Evans*, 2026 WL 2267774, at *7; *accord* App.140–41. Title III moreover "already has an explicit temporal component—a period of twenty-two months," so there is no room for a hidden clock. *Koski*, 2026 WL 2032532, at *6. What "comes into his possession" describes is a transfer from some external source—and the SVRL has none.

### B. Reading the SVRL into Title III would make a federal crime of the list maintenance the NVRA and HAVA require—an absurdity the plain text avoids.

Even if the text left room for doubt, the surrounding scheme would resolve it against Appellant. Title III does not merely require officials to keep covered records; it makes it a crime to "willfully steal[], destroy[], conceal[], mutilate[], or alter[]" them. 52 U.S.C. § 20702. At the same time, federal law otherwise affirmatively

[30] *See* Gov. Br. 8, 14–17.



Appellate Case: 26-2679 Page: 40 Date Filed: 09/17/2026 Entry ID: 5684814

commands election officials to change the voter list—continuously. The NVRA requires a "reasonable effort to remove" ineligible registrants, 52 U.S.C. § 20507(a)(4), and HAVA requires the state to keep its computerized list "updated regularly," 52 U.S.C. § 21083(a)(4). The NVRA and HAVA thus "require [state] election officials to alter the qualified voter file routinely as part of their 'reasonable effort[s]' to ensure accuracy"—the very voter file Appellant says Title III freezes. *Benson II*, 179 F.4th at 479.

Those two commands cannot be reconciled if the SVRL is a Section 301 record. Covering the SVRL would put Title III "on a collision course with the NVRA and HAVA," *id.* at 480, "criminaliz[ing] the same conduct that the NVRA and HAVA require"—this is "such an absurd result" that courts decline to read the statute to produce it, *United States v. DeMarinis*, No. SAG-25-3934, 2026 WL 1780586, at *5 (D. Md. June 18, 2026); App. 139. The reading that harmonizes the scheme is the one the text already supplies: the SVRL does not "come into" the Secretary's possession, so altering it to keep it accurate is no crime.

Appellant's attempts to talk its way out of this conflict only deepen it. It first suggests that "alter" reaches only changes that impair a record's integrity, not routine updates.[31] But "alter" ordinarily means to "modify," *see Sierra Club v. Marsh*, 907

[31] *See* Gov. Br. 24.

F.2d 210, 212 (1st Cir. 1990) (citation omitted), or "to change some of the elements . . . without substituting an entirely new thing," *United States v. Edwards*, 996 F.2d 1213 (4th Cir. 1993) (unpublished table decision) (citation omitted); Appellant's narrower gloss would add nothing to the "steal, destroy, conceal, [and] mutilate" that precede it. It next invokes Section 20702's willfulness requirement, as though no official could "willfully" perform mandated maintenance.[32] But willfulness requires only that the actor act "with knowledge that his conduct was unlawful." *Bryan v. United States*, 524 U.S. 184, 191–92 (1998). On Appellant's own reading, then, an official who updates the list knowing Title III forbids altering covered records would act willfully—leaving officials whipsawed between statutes that command the same act and punish it. *See Koski*, 2026 WL 2032532, at *6. The sensible reading—the one that avoids the whole dilemma—is that the SVRL is not a Section 301 record at all.

The plain text and the statutory scheme point to a single answer. The SVRL is a record Minnesota creates and maintains, not one that "comes into" anyone's possession. It falls outside Title III, Appellant's demand fails as a matter of law, and the judgment should be affirmed.

---

[32] *Id*. at 24–25.


Appellate Case: 26-2679 Page: 42 Date Filed: 09/17/2026 Entry ID: 5684814

## II. APPELLANT'S REQUEST IS LEGALLY DEFICIENT BECAUSE IT FAILS TO PROVIDE THE STATUTORILY REQUIRED STATEMENT OF ITS BASIS AND ITS PURPOSE.

Even if the SVRL was covered under Title III—and it is not—DOJ failed to comply with Title III's requirement to set forth a "demand in writing" that "shall contain a statement of the basis and the purpose therefor." 52 U.S.C. § 20703. DOJ's failure to fulfill these statutory requirements provides multiple additional bases to affirm. The Court should affirm the district court's order.

### A. Appellant is not entitled to summary proceedings because the Federal Rules of Civil Procedure apply.

As an initial matter, the Federal Rules of Civil Procedure govern this civil action, as the text of Title III does not create any special exception from the Federal Rules. *See* 52 U.S.C. § 20705. Appellant claims that enforcing a Title III demand constitutes "a special statutory proceeding," such that the Federal Rules do not apply. It further claims that courts may conduct no inquiry whatsoever into DOJ's compliance with Title III's "basis and purpose" requirements. As numerous federal courts have held, appellant is incorrect.[33]

[33] *See Benson II*, 179 F.4th at 483 n.2; *Amore*, 831 F. Supp. 3d at 155-56; *Oregon*, 828 F. Supp. 3d at 1102–03; *Weber*, 816 F. Supp. 3d at 1182; *Griswold*, 2026 WL 2235374, at *3; *Matthews*, 2026 WL 2212877, at *2; *Caldwell*, 2026 WL 2186515, at *5; *Adams*, 2026 WL 2123871, at *3–4; *Oliver*, 2026 WL 2031479, at *7; *Koski*, 2026 WL 2032532, at *1 n.2; *Warner*, 2026 WL 2018877, at *2–4; *Bd. of Elections of N.Y.*, 2026 WL 1999921, at *6–7; *Scanlan*, 2026 WL 1864054, at *1 n.2; *DeMarinis*, 2026 WL 1780586, at *3; *Bellows*, 2026 WL 1430481, at *5; *Fontes*, 832 F. Supp. 3d, at 947 & n.1.

First, the Federal Rules themselves are explicit on this point. The rules "govern the procedure in *all* civil actions and proceedings in the United States district courts." Fed. R. Civ. P. 1 (emphasis added). The Rules contain limited and narrow carveouts to their own application, none of which include a claim under Title III. *See* Fed. R. Civ. P. 81(a)(5).

Moreover, Appellant's argument fails by the plain text of Title III, which provides: "The United States District Court for the district in which a demand is made pursuant to section 20703 of this title, or in which a record or paper so demanded is located, shall have jurisdiction by *appropriate process* to compel the production of such record or paper." 52 U.S.C. § 20705 (emphasis added). The process that is "appropriate," particularly where Appellant has filed a civil action, is the Federal Rules of Civil Procedure. "Title III cannot transform an election records request by the federal government from an ordinary civil action into an action comparable to an order to show cause." *United States v. Weber*, 816 F. Supp. 3d 1168, 1182 (C.D. Cal. 2026).

Appellant provides no explanation for how it squares its interpretation with these decisions and the Federal Rules themselves. It instead relies almost exclusively on a decades-old, non-binding, and plainly distinguishable case, *Lynd*, 306 F.2d 222, to assert that a Title III demand is "a special statutory proceeding" and that the district court erred in applying the Federal Rules to its federal civil action.


Appellate Case: 26-2679 Page: 44 Date Filed: 09/17/2026 Entry ID: 5684814

But, Appellant's argument contradicts binding precedent decided after *Lynd*. In *United States v. Powell*, the Supreme Court held that proceedings to enforce a federal records statute—one whose jurisdictional provision is materially identical to the CRA, with the same "by appropriate process" language—are governed by the Federal Rules. 379 U.S. 48, 52, 57–58 & n.18 (1964) (citing 26 U.S.C. § 7604(a)); *compare* 26 U.S.C. § 7604(a) ("[T]he United States district court for the district in which such person resides or is found *shall have jurisdiction by appropriate process* to compel such attendance, testimony, or production of books, papers, records, or other data." (emphasis added)), *with* 52 U.S.C. § 20705 ("The United States district court for the district in which a demand is made . . . or in which a record or paper so demanded is located, *shall have jurisdiction by appropriate process* to compel the production of such record or paper." (emphasis added)).

The *Powell* Court was clear: Because the jurisdictional provision of the records statute there provided that records requests would be judicially enforced "by appropriate process," and because no alternative process was specified, "the Federal Rules of Civil Procedure apply." 379 U.S. at 58 & n.18. Where the federal government demands the production of documents in those circumstances, the demand may be contested as the rules allow, on "any appropriate ground." *Id*. at 58 (citation omitted). Nor does the subsequent *Donaldson v. United States*, 400 U.S. 517 (1971), alter this conclusion. *Donaldson* recognizes that summary proceedings


Appellate Case: 26-2679 Page: 45 Date Filed: 09/17/2026 Entry ID: 5684814

may occur in some cases "so long as the rights of the party summoned are protected and an adversary hearing, if requested, is made available," *id.* at 529, but also that "[t]he [Federal] Civil Rules, of course, do have an application to a summons proceeding," *id.* *Donaldson* indicates that—as with any other case governed by the Federal Rules—district courts retain the ability to tailor and streamline the procedural path a case takes, including by limiting the scope of any necessary discovery, provided that core protections, such as scrutiny under Rule 12, are observed. *See Donaldson*, 400 U.S. at 528–29. Here, DOJ demands summary disposition and the transfer of voters' sensitive data, without any substantive review of its pleadings, let alone discovery; this would not allow for the "rights of the party summoned" to be "protected," or for any kind of "adversary hearing." *Id*. at 529.

Finally, Appellant cannot disclaim the Federal Rules since it chose to initiate this action by filing a complaint. Appellant invoked the Federal Rules to commence this litigation, and it cannot now disclaim its choice because the results proved unfavorable. *See United States v. Bd. of Elections of N.Y.*, No. 25-cv-1338, 2026 WL 1999921, at *7 (N.D.N.Y. July 10, 2026) ("[DOJ] commenced the instant action by filing a complaint and proceeding through ordinary litigation. . . . The [c]ourt rejects [DOJ]'s belated attempt to recharacterize this matter."); *Oregon*, 828 F. Supp. 3d at 1102 n.1 ("Even if *Lynd* applied here, the [c]ourt doubts its applicability here where [the United States] made an affirmative choice to file a complaint and proceed


Appellate Case: 26-2679 Page: 46 Date Filed: 09/17/2026 Entry ID: 5684814

through ordinary litigation."); *see also United States v. Amore*, 831 F. Supp. 3d 149, 155 n.1 (D.R.I. 2026), *appeal docketed*, No. 26-1665 (1st Cir. June 9, 2026).

The district court correctly found—as have numerous other federal courts—that the Federal Rules apply.

### B. Appellant's demand fails to satisfy Title III's basis and purpose requirements.

Even if the SVRL were covered by the CRA—and regardless of how DOJ's lawsuit is characterized—the Court can also affirm on the grounds that DOJ failed to comply with Title III's express requirements. To comply with Title III, the Attorney General must set forth a "demand in writing" that "shall contain a statement of the basis and the purpose therefor." 52 U.S.C. § 20703. Title III's "basis" and "purpose" requirements are critical safeguards created precisely to prevent the statute from becoming a tool for baseless expeditions and provide proper notice to election officials of the nature of the federal inquiry. *See* 106 Cong. Rec. 5326 (statutory language introduced to prevent "fishing expedition[s]").

There are three particularly notable aspects of Title III's text. First, Title III's use of the phrase "shall contain" demonstrates that "the requirement that the Attorney General state 'the basis'" and the purpose "is mandatory, not a mere formality with which the federal government or this Court is free to dispense." *United States v. Galvin*, 830 F. Supp. 3d 122, 127 (D. Mass. 2026), *appeal docketed*, No. 26-1657 (1st Cir. June 9, 2026); *see also Benson II*, 179 F.4th at 483 (noting the

word "shall" "creates an obligation impervious to judicial discretion" (quoting *Smith v. Spizzirri*, 601 U.S. 472, 476 (2024))); *United States v. Warner*, No. 26-cv-156, 2026 WL 2018877, at *5 (S.D.W.V. July 13, 2026) (similar).

Second, the demand must be made "in writing," meaning that the basis and the purpose "must be made express." *Galvin*, 830 F. Supp. 3d at 128. In this way, "[t]he statute therefore directs the Court to the Attorney General's written demand—rather than the United States's subsequent court filings—to determine whether that demand" satisfies the basis and purpose requirements. *Id.*

Third, Title III provides that the demand "contain a statement of the basis and the purpose therefor," and confirms that "basis" and "purpose" are two "conceptually distinct" and independent requirements. "The statute . . . employ[s] the definite article 'the' before each noun and join[s] the two with the conjunctive 'and.'" *Scanlan*, 2026 WL 1864054, at *6. As such, "[o]n its plain terms, this construction signals that 'basis' and 'purpose' are separate, non-overlapping requirements, each of which must independently be satisfied." *Id.*; *see also Benson II*, 179 F.4th at 483; *United States v. Aguilar*, No. 25-cv-00728, 2026 WL 2364502, at *5 (D. Nev. Aug. 14, 2026); *Matthews*, 2026 WL 2212877, at *4; *Warner*, 2026 WL 2018877, at *5; *Galvin*, 830 F. Supp. 3d at 128 (finding that "the statutory text clearly conveys that 'the basis' and 'the purpose' are conceptually distinct"); *Weber*,



Appellate Case: 26-2679 Page: 48 Date Filed: 09/17/2026 Entry ID: 5684814

816 F. Supp. 3d at 1182 ("The DOJ is required to offer a written statement of both the purpose and basis for its demands.").

Under Title III, the "basis" is the factual grounds for why the Attorney General believes there may be a violation of federal civil rights law, whereas the "purpose" explains how the requested records would help the Attorney General determine if there is, in fact, a violation. *Lynd*, 306 F.2d at 229 & n.6. In *Lynd*, for example, the Attorney General's stated basis was "information in the possession of the Attorney General tending to show that distinctions on the basis of race or color have been made with respect to registration and voting within [the] jurisdiction." *Id.* at 229 n.6. The stated purpose was "to examine the aforesaid records in order to ascertain whether or not violations of Federal law in regard to registration and voting have occurred," i*d*. at 229 n.6, i.e., to investigate and establish a discriminatory "pattern or practice" in the jurisdiction's voting registration processes, *id*. at 228 n.4.

In its Complaint, Appellant alleges that the "purpose" of its request seeking a copy of Minnesota's "statewide VRL," including "all identifiers" of "both active and inactive voters," was "to ascertain Minnesota's compliance with the list maintenance requirements of HAVA under 52 U.S.C. § 21083(b)(4)(A) and (B)." But neither the Complaint nor DOJ letters that invoked the CRA supply a "basis" for why Appellant believes Minnesota's list maintenance procedures might violate HAVA in the first place. Indeed, the Complaint includes ***no*** allegations that Minnesota's actual list


Appellate Case: 26-2679 Page: 49 Date Filed: 09/17/2026 Entry ID: 5684814

maintenance practices are deficient, unlawful, discriminatory, or noncompliant. Appellant thereby inverts the statutory framework—rather than alleging facts plausibly showing noncompliance with HAVA's list maintenance requirements, Appellant first seeks compelled disclosure of sensitive voter data so that it may subsequently determine whether a violation exists. That is precisely the type of pure "fishing expedition" that Congress added the "basis and purpose" requirement to preclude. *See Amore*, 831 F. Supp. 3d at 155-56; *Galvin*, 830 F. Supp. 3d at 128-29. And the failure to provide any factual "basis" for the demand is in itself a sufficient ground for affirming the dismissal. *E.g.*, *Galvin*, 830 F. Supp. 3d at 128-29.

Moreover, Appellant also failed to provide a valid "purpose" for the demand. Title III requires an "assessment of the sufficiency of . . . the purpose asserted," *United States v. Bellows*, No. 25-cv-468, 2026 WL 1430481, at *7 (D. Me. May 21, 2026), *appeal docketed*, No. 26-1676 (1st Cir. June 15, 2026); otherwise, "[i]f *any* purpose . . . would suffice, then the requirement of stating the demand's purpose would serve no function," *Oregon*, 828 F. Supp. 3d at 1104; *see also Bellows*, 2026 WL 1430481, at *7. The HAVA provisions cited by Appellant for the purpose of its records request under the CRA—52 U.S.C. § 21083(b)(4)(A) and (B)—pertain to the contents of the mail-in voter registration form developed under the NVRA, listing questions and statements that must be included in this form, and requiring voting registrars to notify applicants if they fail to answer a question on the form and


Appellate Case: 26-2679 Page: 50 Date Filed: 09/17/2026 Entry ID: 5684814

to allow these applicants an opportunity to complete the form. *Id.* Minnesota's full and unredacted SVRL would be entirely irrelevant; rather, compliance with these provisions would be assessed by reviewing the contents of this mail voter registration form and communications with applicants who had failed to complete these forms. *See id.*

Nor did Appellant provide a valid purpose considering the actual list maintenance requirements of HAVA as set forth in 52 U.S.C. § 21083(a)(4)(A) and (B). These provisions require states to have a "system of file maintenance that makes a reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters," that includes consistency with the notice-and-waiting period requirements of the NVRA for voters who have changed residence, and require that there are "[s]afeguards to ensure that eligible voters are not removed in error from the official list of eligible voters." 52 U.S.C. § 21083(a)(4)(A), (B). Appellant does not attempt to explain why unredacted voter files are necessary to determine whether Minnesota has "[a] system of file maintenance that makes a reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters." 52 U.S.C. § 21083(a)(4)(A). Nor can it. The state's voter list does not and could not provide enough information to determine if the state has made a "reasonable effort" to remove ineligible voters under § 21083(a)(4)(A). HAVA leaves the mechanisms for conducting list maintenance within the discretion of the state. *See* 52 U.S.C.


Appellate Case: 26-2679 Page: 51 Date Filed: 09/17/2026 Entry ID: 5684814

§§ 21083(a)(2)(A), 21085. The ***procedures*** carried out by a state or locality establish its compliance—not the unredacted voter file.

For these reasons, Appellant's demand fails on its face to meet the basis and purpose requirements of the CRA.

### C. Appellant's demand separately fails because it is pretextual.

DOJ's stated purpose is contradicted by Appellant's own public statements, which provide "firm evidence" of pretextual motives and an improper purpose. Those statements constitute another independent basis to affirm.

Consistent with extensive public reporting, DOJ has now admitted in open court that it will use and share the gathered information with agencies such as DHS, thus potentially facilitating immigration investigations.[34] Immigration enforcement is nowhere mentioned in DOJ's written CRA demand. The Administration has also made plain its desire for a national voter registration list, and earlier this year issued an executive order directing DHS to create citizenship lists for each state.[35] Those efforts are not mentioned in the CRA demand either.

---

[34] Tr. p. 50; *see also* Sarah N. Lynch, Justice Dept. Close to Finalizing Deal to Hand Over States' Voter Roll Data to Homeland Security, Sources Say, CBS News, Mar. 26, 2026, https://perma.cc/T66C-RYR; *see also supra* nn.6–8 and accompanying text.

[35] 91 Fed. Reg. 17125 (2026).



Appellate Case: 26-2679 Page: 52 Date Filed: 09/17/2026 Entry ID: 5684814

DOJ's improper and pretextual purpose is made further clear by former U.S. Attorney General Pam Bondi's January 24, 2026 letter to Minnesota Governor Tim Walz, tying "Operation Metro Surge"—which involves unprecedented and well-documented actions by the ICE agency against the civilian population in this state—with, among other things, Minnesota's refusal to turn over its voter rolls.[36]

Other courts have held that DOJ's demands for statewide voter lists separately fail Title III's requirements because DOJ's stated purpose was pretextual, contrived, and directly contradicted by public representations. *See United States v. Schmidt*, No. 25-cv-01481, 2026 WL 1850016, at *2 (W.D. Pa. June 27, 2026) ("Public statements from government officials reveal its intentions: to create a nationwide voter-database, for potential weaponization in future elections; as a 'fishing expedition,' hoped to advance unsubstantiated claims of non-citizen voting; and as a tool for immigration enforcement."); *Oregon*, 828 F. Supp. 3d at 1108 (DOJ's "statements that it intends to create a nationwide database of confidential voter information and use it in unprecedented ways, including immigration enforcement efforts, is chilling"); *Weber*, 816 F. Supp. 3d at 1184–86; *see also Warner*, 2026 WL 2018877, at *8 n.9 ("Given the lack of an adequate basis or purpose, one is left to wonder what the real purpose was for [DOJ] to go to the trouble of filing civil actions

[36] Bondi Letter, *supra*, n.7.



Appellate Case: 26-2679 Page: 53 Date Filed: 09/17/2026 Entry ID: 5684814

like this one all around the nation."). That is consistent with the CRA's text, which requires disclosure of "*the* purpose" for the demand, not just *a* purpose or *any* potential purpose. *See, e.g.*, *Niz-Chavez v. Garland*, 593 U.S. 155, 165–66 (2021) (noting that the inclusion of a definite article with a singular noun implies that each noun is "a discrete thing").

Although Appellant has repeatedly invoked only assessing voter list maintenance as the stated purpose for its nationwide effort to seize states' voter rolls, the statements and documents in the public record reflect the Administration's real intentions: "[T]o create a nationwide voter-database, for potential weaponization in future elections; as a 'fishing expedition,' hoped to advance unsubstantiated claims of non-citizen voting; and as a tool for immigration enforcement." *Schmidt*, 2026 WL 1850016, at *2. The Court should affirm the district court's order.

## III. THE DEMAND FAILS FOR THE INDEPENDENT REASON THAT THE UNREDACTED SVRL CANNOT LAWFULLY BE COMPELLED.

The judgment can be affirmed on yet another independent ground the district court declined to reach.[37] *United States v. Garrido*, 995 F.2d 808, 813 (8th Cir. 1993); *see Brown v. St. Louis Police Dep't*, 691 F.2d 393, 396–97 (8th Cir. 1982) (discussing the Court's discretion to "affirm on any ground supported by the record even if the issue was not pleaded, tried, or otherwise referred to in the proceedings

[37] App.143.

below."). DOJ does not ask for a redacted list, or for the fact of Minnesota's compliance; it demands an *unredacted* electronic copy of every voter's date of birth, driver's-license number, and Social Security number.[38] That unredacted data is the only relief it seeks—so if it cannot be compelled, the claim as pleaded fails.

### A. Redaction of voters' sensitive identifiers is required before any disclosure.

Like the CRA, the NVRA is silent on how sensitive personal information must be treated on disclosure. *See* 52 U.S.C. §§ 20703, 20507(i)(1). Courts construing the NVRA have therefore read it, as courts must, to avoid burdening the right to vote. *See TCI of N. Dakota, Inc. v. Schriock Holding Co.*, 11 F.3d 812, 815 (8th Cir. 1993) ("courts are obligated to interpret statutes . . . to avoid constitutional infirmities"). And they have uniformly permitted—sometimes required—redaction of voters' sensitive data. "[N]othing in the text of the NVRA prohibits the appropriate redaction of uniquely or highly sensitive personal information in the Voter File," and such redaction "can further assuage the potential privacy risks implicated by the public release of the Voter File." *Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024); *accord Pub. Int. Legal Found., Inc. v. N.C. State Bd. of Elections*, 996 F.3d 257, 266–68 (4th Cir. 2021); *Pub. Int. Legal Found., Inc. v. Dahlstrom*, 673 F. Supp. 3d 1004, 1015–16 (D. Alaska 2023); *Pub. Int. Legal*

[38] Gov. Br. 51; App.120.

*Found., Inc. v. Matthews*, 589 F. Supp. 3d 932, 942 (C.D. Ill. 2022), *clarified on denial of reconsideration,* No. 20-CV-3190, 2022 WL 1174099 (C.D. Ill. Apr. 20, 2022).

Redaction is not merely permitted; it is compelled where unredacted disclosure would "create[] an intolerable burden on [the right to vote] as protected by the First and Fourteenth Amendments." *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 339 (4th Cir. 2012) (citation omitted). Even while ordering the release of registration applications, the Fourth Circuit required Social Security numbers to be redacted as "uniquely sensitive and vulnerable to abuse," because unredacted release risked deterring citizens from registering to vote. *Id.* at 339 (citation omitted); *see also* R. Doc. 32-3 ¶¶ 4–7; R. Doc. 32-4 ¶¶ 2-4. That reasoning applies with full force to Title III: the federal seizure of the sensitive personal information of millions of Minnesota voters would unconstitutionally chill their right to vote, and redacting such information is appropriate and even sometimes constitutionally required to ensure unnecessary disclosures do not burden citizens' fundamental right to vote. The limited Title III case law is in accord, recognizing the court's "power and duty to issue protective orders," including orders shielding the very fields at issue here. *Lynd*, 306 F.2d at 230.

Appellant's answers do not withstand scrutiny. It argues that the NVRA cases are inapposite because the NVRA authorizes *public* inspection while Title III

confines inspection to the Attorney General under Section 304's nondisclosure rule.[39] But the interest redaction protects—voters' sensitive identifiers and the chill that attends their exposure—does not turn on the identity of the recipient; invasions of privacy by the federal government are no less chilling than those by private actors—indeed some would find federal intrusions more problematic. See R. Doc. 32-3 ¶¶ 4–7; R. Doc. 32-4 ¶¶ 2-4. And Section 304's promise of confidentiality supplies no comfort on this record. Asked whether the Attorney General could invoke the Privacy Act's law-enforcement exception to reuse the collected lists to examine "every person who has voted in the country," Appellant's own counsel answered: "I can honestly say I do not know the answer to that."[40] And of the fifteen states that have produced their lists, thirteen did so "with no agreement" at all.[41] A confidentiality provision whose limits Appellant cannot describe cannot justify compelling the unredacted data in the first place. And Appellant's categorical premise—that "Title III does not permit Minnesota to redact records"[42]—is one it does not itself hold: elsewhere it "agrees not to object to redaction" of the First-Amendment fields on the list.[43] Having conceded that the statute permits redacting

---

[39] Gov. Br. 51–52 (citing 52 U.S.C. § 20704).

[40] Tr. p. 50.

[41] Tr. p. 34.

[42] Gov. Br. 51–52.

[43] *Id*. at 59–60.



Appellate Case: 26-2679 Page: 57 Date Filed: 09/17/2026 Entry ID: 5684814

some sensitive fields, the government cannot maintain that it forbids redacting others.

Nor does Appellant's "no greater burden" theory hold.[44] It reasons that because HAVA already requires voters to give the state their identifying numbers, sharing those numbers with the federal government imposes "no greater" burden. But supplying information to one's own state election office as a condition of registration is a categorically different act from having that information seized by the federal executive and aggregated, with every other state's, into an unprecedented national repository. The "intolerable burden" recognized in *Long* arises precisely from that risk of federal aggregation and downstream misuse—a risk this record makes concrete, not hypothetical: DOJ concedes it enters "use agreement[s]" with the Social Security Administration to run voters' Social Security numbers against outside databases.[45]

**B. The demand independently fails because the United States has not complied with the Privacy Act.**

The Privacy Act forbids any agency to "maintain [any] record describing how any individual exercises rights guaranteed by the First Amendment," except in narrow circumstances not present here. 5 U.S.C. § 552a(e)(7); *see also id.* §§ 552a(a)(3), (a)(5), (e)(4), (f). Voter registration, participation in elections, and

---

[44] *Id*. at 52.

[45] Tr. p. 46.



Appellate Case: 26-2679 Page: 58 Date Filed: 09/17/2026 Entry ID: 5684814

party affiliation are all forms of protected political expression. *See Buckley v. Am. Const. L. Found., Inc.*, 525 U.S. 182, 195 (1999); *Rutan v. Republican Party of Ill.*, 497 U.S. 62, 69, 75–76 (1990). Assembling the unredacted SVRLs of Minnesota and other states into a centralized federal repository is the archetypal database the provision forbids. As the *Weber* court held on materially identical facts, "[t]he Privacy Act bars [the] DOJ's request for [a state's] unredacted voter roll because fulfillment of that request would include information regarding previous election participation and party affiliation." *Weber*, 816 F. Supp. 3d at 1193.

Appellant's two escape hatches both fail. *First*, it relies on a decades-old System of Records Notice, JUSTICE/CRT-001, but that notice supplies nowhere near the notice the Privacy Act demands for this unprecedented collection. *See Weber*, 816 F. Supp. 3d at 1193-94; Gov. Br. 57–58. *Second*, its theory that every registered voter is simultaneously a "[s]ubject[] of investigation[]" and a "victim[]" within the notice's scope proves too much.[46] On that reading, the Department could brand every American voter both a suspect and a victim of voter fraud and thereby compile a nationwide voter database as "routine" enforcement—draining the Privacy Act of meaning. The "authorized law enforcement activity" exception cannot be stretched to license the very harm the statute exists to prevent.

[46] Gov. Br. 58–59.


Appellate Case: 26-2679 Page: 59 Date Filed: 09/17/2026 Entry ID: 5684814

This record removes any doubt that DOJ's privacy assurances cannot be taken on faith. The Social Security Administration has admitted in a federal filing that, after a "political advocacy group" whose "stated aim was to find evidence of voter fraud and to overturn election results in certain States" approached its DOGE team, "one of the DOGE team members signed a 'Voter Data Agreement,' in his capacity as an SSA employee," and that DOGE actors shared Social Security data "in a manner [that] is outside SSA's security protocols." Notice of Corrections to the Record at 5–6, *Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Soc. Sec. Admin.*, No. 1:25-cv-596-ELH (D. Md. Jan. 16, 2026), Dkt. No. 197.

The then–Attorney General's letter to Minnesota's Governor tied the demand for the state's voter roll to immigration enforcement. And at the hearing below, Appellant conceded that 13 of the 15 producing States had turned over their lists with no protective agreement at all.[47] Against that backdrop, Appellant's admissions that federal officials have improperly shared sensitive Social Security data with third-party election-denier groups confirm that the unredacted data it seeks cannot be entrusted to it consistent with the Privacy Act.

---

[47] Now, "[a]t least 16 states have either provided or said they will provide their full statewide voter registration lists, including driver's license and Social Security numbers: Alabama, Alaska, Arkansas, Florida, Indiana, Iowa, Louisiana, Mississippi, Nebraska, Ohio, Oklahoma, South Carolina, South Dakota, Tennessee, Texas, and Wyoming." Martinez-Ochoa, Tracker of Justice Department Requests for Voter Information, *supra* note 1; Tr. p. 34.


Appellate Case: 26-2679 Page: 60 Date Filed: 09/17/2026 Entry ID: 5684814

Because Appellant demands only an unredacted SVRL, and because that data cannot be compelled consistent with constitutional and privacy laws, the demand is defective—and the judgment should be affirmed on this independent ground as well.

## IV. CONCLUSION

For the foregoing reasons, Intervenor Defendants-Appellees ask the Court to affirm the district court's judgment dismissing DOJ's Title III claim and denying the Motion for Order to Compel Federal Election Records.


Appellate Case: 26-2679 Page: 61 Date Filed: 09/17/2026 Entry ID: 5684814

Dated: September 11, 2026

Respectfully submitted,

**STOEL RIVES LLP**

By: /s/ *Andrew J. Pieper*
ANDREW J. PIEPER
33 South Sixth Street, Suite 4200
Minneapolis, MN 55402
Telephone: 612.373.8800
andrew.pieper@stoel.com

TERESA J. NELSON
DAVID P. MCKINNEY
**AMERICAN CIVIL LIBERTIES UNION OF MINNESOTA**
2828 University Ave SE
Minneapolis, MN 55414
(651) 645-4097
tnelson@aclu-mn.org
dmckinney@aclu-mn.org

THERESA J. LEE
SOPHIA LIN LAKIN
**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
tlee@aclu.org
slakin@aclu.org

PATRICIA J. YAN
**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
915 15th Street NW
Washington, DC 20005
(202) 457-0800
pyan@aclu.org

*Counsel for Intervenor Defendants-Appellees League of Women Voters of Minnesota, Common Cause, Jennifer Compeau, and Valerie Mangskau*



Appellate Case: 26-2679 Page: 62 Date Filed: 09/17/2026 Entry ID: 5684814

## CERTIFICATE OF COMPLIANCE

Undersigned counsel certifies that the following statements are true:

1. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font.

2. This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 11,097 words.

3. This document complies with 8th Cir. R. 28A(h) because it was scanned for viruses using Microsoft Defender AV and Microsoft Defense for Endpoint Plan 2 and no virus has been detected.

Dated: September 11, 2026

STOEL RIVES LLP

*s/ Andrew J. Pieper*
ANDREW J. PIEPER

*Counsel for Intervenor Defendant-Appellees League of Women Voters of Minnesota, Common Cause, Jennifer Compeau, and Valerie Mangskau*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Joint Answering Brief of Intervenor Defendants-Appellees League of Women Voters of Minnesota, Common Cause, Valerie Mangskau and Jennifer Compeau was electronically filed with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: September 11, 2026

STOEL RIVES LLP

*s/ Andrew J. Pieper*
ANDREW J. PIEPER
*Counsel for Intervenor Defendant-Appellees League of Women Voters of Minnesota, Common Cause, Jennifer Compeau, and Valerie Mangskau*



Appellate Case: 26-2679 Page: 64 Date Filed: 09/17/2026 Entry ID: 5684814