No. 26-2679

IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellant

v.

STEVE SIMON,
in his official capacity as Secretary of State for the State of Minnesota;
MINNESOTA, STATE OF,

Defendants-Appellees

MINNESOTA ALLIANCE FOR RETIRED AMERICANS EDUCATION FUND; MISAEL HERNANDEZ; COMMON CAUSE; LEAGUE OF WOMEN VOTERS OF MINNESOTA; VALERIE MANGSKAU; JENNIFER COMPEAU; NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE; CYNTHIA WILSON,

Intervenor Defendants-Appellees

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

# REPLY BRIEF FOR THE UNITED STATES AS APPELLANT

*(See inside cover for continuation of Counsel)*

*(continuation of Counsel)*

HARMEET K. DHILLON
Assistant Attorney General

ERIC A. SELL
Deputy Assistant Attorney General

ANDREW G. BRANIFF
DAVID N. GOLDMAN
MEREDITH L. BAKER
Attorneys
Department of Justice
Civil Rights Division
Appellate Section
Ben Franklin Station
P.O. Box 14403
Washington, D.C. 20044-4403
(202) 532-3803

## TABLE OF CONTENTS

**PAGE**

INTRODUCTION .......... 1

ARGUMENT

I. The DOJ's demand for Minnesota's SVRL satisfied Title III's requirements. .......... 1

A. Minnesota's SVRL is a record that "comes into" Secretary Simon's possession. .......... 1

B. Courts play a limited role in assessing the Attorney General's demand under Title III. .......... 8

C. The United States adequately stated the purpose of its demand for Minnesota's SVRL. .......... 14

D. The DOJ's statement of basis was sufficient. .......... 18

E. Mere allegations of purported improper purposes do not eliminate the United States' entitlement to records under Section 303. .......... 22

II. The DOJ's demand for an electronic, unredacted copy of Minnesota's SVRL does not implicate or violate federal or state privacy laws. .......... 24

A. Federal law preempts any contrary Minnesota privacy law. .......... 24

B. The DOJ's demand complied with the Privacy Act. .......... 26

C. The E-Government Act does not prevent the DOJ from obtaining Minnesota's SVRL. .......... 30

**TABLE OF CONTENTS (continued):** **PAGE**

D. The Driver's Privacy Protection Act does not prevent the DOJ from obtaining Minnesota's SVRL. .......... 31

III. If this Court reverses, it should instruct the district court to order immediate production of the SVRL. .......... 31

CONCLUSION .......... 32

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE



Appellate Case: 26-2679 Page: 4 Date Filed: 09/21/2026 Entry ID: 5686064

## TABLE OF AUTHORITIES

**CASES:** **PAGE**

*American Oversight v. United States Dep't of Just.*, 45 F.4th 579 (2d Cir. 2022) .......... 29

*Bostock v. Clayton Cnty.*, 590 U.S. 644 (2020) .......... 25

*Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647 (2021) .......... 16, 29

*Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963) (per curiam) .......... 15, 20

*Donaldson v. United States*, 400 U.S. 517 (1971), *superseded by statute on other grounds*, Tax Reform Act of 1976, Pub. L. No. 94-455, 90 Stat.1520 .......... 12-13

*Fischer v. United States*, 603 U.S. 480 (2024) .......... 8

*Honeycutt v. United States*, 581 U.S. 443 (2017) .......... 2

*Huddleston v. United States*, 415 U.S. 814 (1974) .......... 2

*Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962) .......... *passim*

*League of Women Voters v. United States Dep't of Homeland Sec.*, 835 F. Supp. 3d 79 (D.D.C.), *appeals pending*, Nos. 26-5243, 26-5301 (D.C. Cir.) .......... 23-24

*Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024) .......... 19

*Neitzke v. Williams*, 490 U.S. 319 (1989) .......... 19

*Nielsen v. Preap*, 586 U.S. 392 (2019) .......... 14

**CASES (continued):** **PAGE**

*Parker Drilling Mgmt. Servs., Ltd. v. Newton*,
587 U.S. 601 (2019) .......... 16

*ProGrowth Bank, Inc. v. Wells Fargo Bank, N.A.*,
558 F.3d 809 (8th Cir. 2009) .......... 14

*Purcell v. Gonzalez*, 549 U.S. 1 (2006) .......... 16

*Taylor v. Freeland & Kronz*, 503 U.S. 638 (1992) .......... 19

*United States v. Benson*,
819 F. Supp. 3d 753 (W.D. Mich. 2026),
*aff'd*, 179 F.4th 470,
*reh'g en banc denied*, No. 26-1225,
2026 WL 2364306 (6th Cir. Aug. 14, 2026) .......... *passim*

*United States v. Lynd*, 301 F.2d 818 (5th Cir. 1962) .......... 20

*United States v. Morton Salt Co.*, 338 U.S. 632 (1950) .......... 17

*United States v. Palomar-Santiago*, 593 U.S. 321 (2021) .......... 14

*United States v. Powell*, 379 U.S. 48 (1964) .......... 9-10

*United States v. Scanlan*, No. 25-cv-371, 2026 WL 1864054
(D.N.H. June 29, 2026), *appeal pending*,
No. 26-1783 (1st Cir.) .......... 6

*United States v. Taylor*, 487 U.S. 326 (1988) .......... 13

*United States Dep't of Just. v. Tax Analysts*,
492 U.S. 136 (1989) .......... 3

*Voter Reference Found., LLC v. Torrez*,
160 F.4th 1068 (10th Cir. 2025) .......... 8

**CASES (continued):** **PAGE**


*Wisconsin Cent. Ltd. v. United States*, 585 U.S. 274 (2018) .................. 14


**CONSTITUTION:**


U.S. Const. Art. VI, Cl. 2 .................................................................. 25


**STATUTES:**


Civil Rights Act of 1960
52 U.S.C. 10101 ..................................................................... 15
52 U.S.C. 20701 ..................................................................... 2-3,5-8
52 U.S.C. 20701-20706 ............................................................ 15
52 U.S.C. 20702 ..................................................................... 8, 27
52 U.S.C. 20703 ..................................................................... 9
52 U.S.C. 20704 ..................................................................... 12-13, 24
52 U.S.C. 20705 ..................................................................... 10

Driver's Privacy Protection Act
18 U.S.C. 2721 *et seq.* ............................................................ 31
18 U.S.C. 2721(b)(1) ............................................................... 31

E-Government Act of 2002
Pub. L. No. 107-347, 116 Stat. 2921-2922 ................................. 30
44 U.S.C. 3501 note ................................................................ 30
44 U.S.C. 3502(3)(A)(i) ........................................................... 30
Pub. L. No. 107-347, § 208, 116 Stat. 2921-2922 ........................ 30

Help America Vote Act of 2002
52 U.S.C. 21111 ..................................................................... 27
Pub. L. No. 107-252, 116 Stat. 1666 (2002) .............................. 15-16

Privacy Act of 1974
5 U.S.C. 552a(e)(4) ................................................................ 27-28
5 U.S.C. 552a(e)(7) ................................................................ 26-27, 32

26 U.S.C. 7602(a)(1) (1954 ed.) ................................................. 10

**STATUTES (continued):** **PAGE**

26 U.S.C. 7605(b) (1954 ed.) .......... 10

**REGULATIONS:**

28 C.F.R. 0.50(a) .......... 28-29

28 C.F.R. 0.51 .......... 28

68 Fed. Reg. 47,611 (Aug. 11, 2003) .......... 27-29

70 Fed. Reg. 43,904 (July 29, 2005) .......... 27

82 Fed. Reg. 24,147 (May 25, 2017) .......... 27

**LEGISLATIVE HISTORY:**

H.R. Rep. No. 329, pt. 1, 107th Cong., 1st Sess. (2001) .......... 16, 18

106 Cong. Rec. 6392 (1960) .......... 21

106 Cong. Rec. 7767 (1960) .......... 15

**RULE:**

Fed. R. Civ. P. 81(a)(5) .......... 12

**MISCELLANEOUS:**

7 Oxford English Dictionary (1933) .......... 2

U.S. Citizenship & Immigr. Servs., SAVE Agency Search Tool, https://tinyurl.com/n7fpu4zz (last visited Sept. 17, 2026) .......... 23

*Webster's New World Dictionary of the American Language* (8th coll. ed. 1960) .......... 20



Appellate Case: 26-2679 Page: 8 Date Filed: 09/21/2026 Entry ID: 5686064

## INTRODUCTION

Accurate voter rolls are an essential precondition for a verifiable and trustworthy elections process. The Department of Justice (DOJ) seeks to obtain Minnesota's statewide voter registration list (SVRL) to ensure that Minnesota is following federal law in the oversight and conduct of its federal elections in a manner that will assure the public of a trustworthy process. The DOJ is not doing anything particularly new. Its request for the State's SVRL is a lawful exercise of its authority under Title III of the Civil Rights Act of 1960 (CRA), and it is made for the lawful purpose of ensuring the State's compliance with the list-maintenance requirements of the Help America Vote Act of 2002 (HAVA). None of the arguments advanced by Minnesota and intervenors (collectively, defendants) support the district court's contrary conclusion.

## ARGUMENT

### I. The DOJ's demand for Minnesota's SVRL satisfied Title III's requirements.

#### A. Minnesota's SVRL is a record that "comes into" Secretary Simon's possession.

Title III provides that "[e]very officer of election shall retain and preserve, for a period of twenty-two months from the date of any [federal election], all records and papers which come into his possession relating

to any application, registration, payment of poll tax, or other act requisite to voting in such election." 52 U.S.C. 20701. Defendants argue that the two words "come into" exclude from the broad scope of the "relating to" clause all state-generated records. They do not. *See* U.S. Br.12-26.[1]

1. Defendants rely on *Honeycutt v. United States*, 581 U.S. 443 (2017) and *Huddleston v. United States*, 415 U.S. 814 (1974). Minn. Br.26; LWV Br.23; Alliance Br.19. But neither case defined "come into possession" or suggested that this phrase imposes an outside-source requirement. *See Honeycutt*, 581 U.S. at 449-450; *Huddleston*, 415 U.S. at 820, 823. Furthermore, the *Honeycutt* Court noted that one definition of "obtain" included "[t]o come into the possession . . . of (something) by one's own effort." *Honeycutt*, 581 U.S. at 449 (brackets in original) (quoting 7 *Oxford English Dictionary* 37 (1933)). Even under this

[1] "U.S. Br.__" refers to the page numbers of the United States' Opening Brief filed with this Court. "Br.__" refers to the page numbers of each party's appellee brief or each amicus brief. "App.__" refers to the page numbers of the Appendix filed with the United States' Opening Brief. "R.Doc.__, at__" refers to the docket number and internal page numbers on the district court docket sheet, No. 0:25-cv-3761 (D. Minn.).



Appellate Case: 26-2679 Page: 10 Date Filed: 09/21/2026 Entry ID: 5686064

definition, an officer of election who uses his own efforts to compile voter data "comes into possession" of the SVRL.

Defendants further err in discounting *United States Department of Justice v. Tax Analysts*, 492 U.S. 136 (1989) (*see* U.S. Br.17) because the Court there was not interpreting the phrase in a statute (Alliance Br.25; *see also* Minn. Br.29). But *Tax Analysts* used the phrase "come into . . . possession" in a manner consistent with the United States' argument here and completely *inconsistent* with defendants' supposed "plain language" interpretation of the phrase. *Tax Analysts*, 492 U.S. at 145; Minn. Br.25 (bolding omitted); *see* LWV Br.21; Alliance Br.23; *see also United States v. Benson*, No. 26-1225, 2026 WL 2364306, at *7 (6th Cir. Aug. 14, 2026) (*Benson III*) (Griffin, J., dissenting) (discussing that *Tax Analysts* is "instructive").

2. Minnesota also argues that because Section 301's enumerated records "are all voter-submitted documents," the "catchall" phrase "other act requisite to voting" must "also refer[] to the same type of documents." Minn. Br.27; *see* LWV Br.24; Alliance Br.21. But even if the enumerated records were submitted by voters, the entire list is drastically expanded by the phrase "relating to." 52 U.S.C. 20701; *see* U.S. Br.13. The breadth



Appellate Case: 26-2679 Page: 11 Date Filed: 09/21/2026 Entry ID: 5686064

of this phrase belies Minnesota's argument that because "records like the SVRL did not exist" at the CRA's enactment such records "were not contemplated to be encompassed within [the CRA's] scope." Minn. Br.33.

Equally unpersuasive is Alliance's argument that the CRA does not cover voter rolls and voter indices because those records were already available to the DOJ in most States. Alliance Br.27-29. Congress passed the CRA after States changed their state laws to permit or require the destruction of voter applications to thwart the Commission on Civil Rights. *See* Minn. Br.24; Alliance Br.4; Kousser, et al. Br.13, 18. It beggars belief that Congress drew Title III to exclude the State-created records needed to uncover discriminatory practices and merely relied on a continued right of access under state law. *See Benson III*, 2026 WL 2364306, at *16 (Thapar, J., dissenting) ("[T]he panel majority's reading of Title III leaves the Attorney General with a futile system that Congress never designed."). Minnesota nevertheless argues that the CRA was not intended to cover materials created by election officials (Minn. Br.23-25) and that "[c]omparing accepted and rejected applications was central to assessing discriminatory practices" (Minn. Br.33). But the State fails to explain how voter applications, on their own, could have

demonstrated discrimination absent the notations or registration rolls *created by election officials showing* whether those applications were accepted or rejected.

Defendants further err in citing other statutes as support for their interpretation of the phrase "come into possession." Minn. Br.26; Alliance Br.26. In none of these statutes does this phrase itself denote an external-source limitation; rather, to the extent there is an outside source of material, context or other statutory language suggests it. And the United States' statutory examples show that the phrase is used in discussing how or when possession began. *See* U.S. Br.17-18.

3. Next, defendants take issue with the officer-specific nature of Title III. Minnesota suggests that because Secretary Simon holds the SVRL in his official capacity it is really the State that holds the SVRL. Minn. Br.30. But Minnesota cannot shield officers from Title III responsibilities by framing its SVRL as a State-held record because the State acts through the individual officers targeted by Title III. *See* 52 U.S.C. 20701 (imposing responsibilities on individual election officers and *criminal* penalties for their violation). That Secretary Simon took office prior to the most recent 22-month period under Section 301 is also



Appellate Case: 26-2679 Page: 13 Date Filed: 09/21/2026 Entry ID: 5686064

of no consequence. *See* Minn. Br.30-31. The 22-month period relates to the date of a federal election, not the date when Secretary Simon first obtained possession of a prior version of the SVRL.[2] *See* 52 U.S.C. 20701. The current SVRL, as updated by Secretary Simon's staff, has now come into his possession.

Alliance argues that the SVRL "does not transfer from one election officer to another as a static, discrete record would but is a 'continuously maintained, state-generated compilation of data.'" Alliance Br.29-30 (quoting *United States v. Scanlan*, No. 25-cv-371, 2026 WL 1864054, at *6 (D.N.H. June 29, 2026), *appeal pending*, No. 26-1783 (1st Cir. docketed July 7, 2026)). But even if that is so, a compilation of data is still a record. It cannot be that "because many people can access the voter file, no one possesses it." *Benson III*, 2026 WL 2364306, at *14 (Thapar, J., dissenting). "[T]he meaning of 'comes into . . . possession' doesn't change just because technology allows that term to now encompass many more

[2] Similarly, Minnesota is also incorrect that the 22-month retention period shows that Congress intended only "to encompass registration-related materials received for specific elections" and therefore did not intend to cover the SVRL. Minn. Br.27. The SVRL "relat[es] to" every voter's registration and is "requisite to voting" at the moment any registration is either added or removed from the list. 52 U.S.C. 20701.



Appellate Case: 26-2679 Page: 14 Date Filed: 09/21/2026 Entry ID: 5686064

people and records than when it was first enacted into law." *Ibid.* (ellipsis in original).

Defendants also rely on a metaphor from the Sixth Circuit panel majority in *Benson II*, arguing that "a baker who bought ingredients and then baked a cake would not then say that she 'came into possession' of a cake." Minn. Br.28 (quoting *United States v. Benson*, 179 F.4th 470, 479 (*Benson II*), *reh'g en banc denied*, No. 26-1225, 2026 WL 2364306 (6th Cir. Aug. 14, 2026) (*Benson III*)); *see* Alliance Br.19; LWV Br.23 (raising similar analogies). But Secretary Simon is not a baker in this hypothetical. Rather, he oversees other bakers. So "the rule becomes that a baker comes into possession of a cake delivered from another bakery but not of a cake handed to her by another baker working in the same bakery." *Benson III*, 2026 WL 2364306, at *8 (Griffin, J., dissenting). Defendants, in other words, draw "an organizational boundary" requirement. *Ibid.* "Yet nothing in § 20701 draws that distinction." *Id.* at *9.

4. Finally, defendants mistakenly contend that interpreting Section 301 to cover an SVRL that is constantly altered to comply with HAVA would conflict with Section 302, which prohibits "willfully steal[ing],



Appellate Case: 26-2679 Page: 15 Date Filed: 09/21/2026 Entry ID: 5686064

destroy[ing], conceal[ing], mutilat[ing], or alter[ing] any record or paper" covered by Section 301, 52 U.S.C. 20702.[3] Minn. Br.28-29; Alliance Br.22-23; LWV Br.25-27. Defendants fail to grapple with the associated words surrounding "alter" in Title III, which must be understood as "actions that, by their nature, impair the integrity or availability of records, documents, or objects." *Fischer v. United States*, 603 U.S. 480, 490 (2024). Performing list maintenance under HAVA is thus not "alter[ing]" the SVRL at all, 52 U.S.C. 20702, but instead "retain[ing] and preserv[ing]" it, 52 U.S.C. 20701; *see Voter Reference Found., LLC v. Torrez*, 160 F.4th 1068, 1085 (10th Cir. 2025) (applying similar analysis to the NVRA's obligation that States "maintain" records).

### B. Courts play a limited role in assessing the Attorney General's demand under Title III.

The federal court hearing on the DOJ's Section 303 demand is a "special statutory proceeding" not subject to the ordinary pleading standards and panoply of Federal Rules of Civil Procedure. *Kennedy v.*

---

[3] This Court should see through Minnesota's Ship-of-Theseus rhetoric. The SVRL contains a discrete set of data at any given time-slice, and if someone (for example) in October of 2026 *altered* a saved version of the SVRL from June 2025, and presented it as the June 2025 version, *that* may violate Section 302. But that is a far cry from imposing liability for HAVA-required maintenance.

*Lynd*, 306 F.2d 222, 225-226 (5th Cir. 1962) (*Lynd II*). The Attorney General need only make a "simple statement" that the state election official against whom an order of reproduction is sought has "failed or refused to make such papers 'available for inspection, reproduction, and copying.'" *Id.* at 226 (quoting 52 U.S.C. 20703). "There is no place" for the state election official to challenge, or the court to review or require discovery regarding "the factual support for, or the sufficiency of, the Attorney General's 'statement of the basis and the purpose therefor' as set forth in the written demand." *Ibid.* (quoting 52 U.S.C. 20703). Title III is satisfied so long as the Attorney General states in writing the basis and purpose of the demand, as happened here. U.S. Br.29-35.

1. Defendants reiterate the district court's mistaken conclusion that *United States v. Powell*, 379 U.S. 48 (1964), overrides *Lynd II* and compels ordinary application of the Federal Rules of Civil Procedure. Minn. Br.14-15; Alliance Br.34-36; NAACP Br.14-15; LWV Br.30-31. *Powell* involved an Internal Revenue Service (IRS) administrative summons served on a taxpayer. *Powell* explained that judicial inquiry was appropriate to determine "if the summons had been issued for an improper purpose, such as to harass the taxpayer or to put pressure on

him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation." 379 U.S. at 58. Section 7605(b) of the Internal Revenue Code (IRC) prohibited the IRS from subjecting a taxpayer "to unnecessary examination or investigations," *id.* at 52-53 (quoting 26 U.S.C. 7605(b) (1954 ed.)), and limited the IRS to documents that "may be relevant or material" to its "inquiry," 26 U.S.C. 7602(a)(1) (1954 ed.). The absence of similar statutory language limiting the Attorney General's authority to compel records under the CRA readily distinguishes *Powell*. U.S. Br.33-34.

Defendants argue that *Powell* nonetheless controls because the CRA, like the IRC, authorizes the Government to seek judicial enforcement "by appropriate process," 52 U.S.C. 20705, without specifying a procedure. Minn. Br.14; Alliance Br.34; LWV Br.30. Not so: the IRC's "relevant or material" limitation and its "necessary" requirement have no CRA analogue. *Cf. Powell*, 379 U.S. at 52-53 (quoting 26 U.S.C. 7605(b) (1954 ed.)); U.S. Br.32.

2. Because *Powell* is distinguishable, this Court should consider *Lynd II* as persuasive authority. Alliance erroneously contends that *Lynd II* supports district-court inquiry into the factual sufficiency of the DOJ's



Appellate Case: 26-2679 Page: 18 Date Filed: 09/21/2026 Entry ID: 5686064

demand by paraphrasing the unremarkable conclusion that a court may decide whether the requested record comes within Title III. Alliance Br.36 (quoting *Lynd II*, 306 F.2d at 226); *see* pp.1-8, *supra*. Alliance ignores *Lynd II*'s admonition that "the factual foundation for, or the sufficiency of, the Attorney General's statement of the basis and the purpose contained in the written demand, is not open to judicial review or ascertainment." 306 F.2d at 226 (citation and internal quotation marks omitted).

No more persuasive is defendants' attempt to distinguish *Lynd II* on factual grounds—namely, that the Attorney General's demand in that case stated a proper basis and purpose and related to an investigation into voting-related racial discrimination. Alliance Br.36-37; NAACP Br.13-14. These distinctions say nothing about whether proceedings under the CRA are or are not summary in nature—only whether the statute was satisfied in a given case.

Moreover, *Lynd II*'s observation that the Attorney General demanded "public records which ought ordinarily to be open to legitimate reasonable inspection," as opposed to "confidential, private papers and effects," 306 F.2d at 231, was not a description of the scope of Title III.



Appellate Case: 26-2679 Page: 19 Date Filed: 09/21/2026 Entry ID: 5686064

*Contra* Alliance Br.47; NAACP Br.42-43. Rather, the court explained that the district court's "delay" in allowing "inspection and copying" was unwarranted given the nature of the records sought in that case. *Lynd II*, 306 F.2d at 230-231. If Title III were limited to "public records" that contained no sensitive information, then there would be no need for Title III's non-disclosure provision. 52 U.S.C. 20704.

3. Defendants further argue that the Federal Rules apply by default to proceedings to compel document production via Government subpoena. Minn. Br.13-14; Alliance Br.33-34; LWV Br.29. To be sure, that is the general case. *See* Fed. R. Civ. P. 81(a)(5). In *Donaldson v. United States*, however, the Supreme Court observed that, although the Rules of Civil Procedure "have an application to a summons proceeding," they "are not inflexible in this application"; and, moreover, precedent does not suggest those rules should be used to "impair a summary enforcement proceeding so long as the rights of the party summoned are protected and an adversary hearing, if requested, is made available." 400 U.S. 517, 528-529 (1971), *superseded by statute on other grounds*, Tax Reform Act of 1976, Pub. L. No. 94-455, 90 Stat. 1520; U.S. Br.35. Such is the case here, where the "matter should be set down without delay for suitable hearing



Appellate Case: 26-2679 Page: 20 Date Filed: 09/21/2026 Entry ID: 5686064

on the matters open for determination"—in particular, "whether the written demand has been made" and "whether the custodians against whom orders are sought have been given reasonable notice of the pendency of the proceeding." *Lynd II*, 306 F.2d at 226.[4]

Defendants contend that *Donaldson* does not assist the United States because it "confirmed that Federal Rule 24(a)(2) . . . continues to apply in a civil action to enforce a tax summons" (Alliance Br.36 n.14) and merely "indicates that . . . district courts retain the ability to tailor and streamline the procedural path a case takes" (LWV Br.31). Even if that is so, a district court's exercise of discretion to limit the application of the Federal Rules is not "unfettered by meaningful standards or shielded from thorough appellate review." *United States v. Taylor*, 487 U.S. 326, 336 (1988) (citation omitted). And Section 305's summary procedure, combined with its lack of any meaningful standard against

[4] The League of Women Voters argue that the transfer of voters' sensitive personal information, without substantive review, would not protect "the rights of the party summoned" as *Donaldson* requires. LWV Br.31 (quoting *Donaldson*, 400 U.S. at 529). The party whose rights for which *Donaldson* mandates protection is Secretary Simon, not the voters. In any event, the rights of voters *are* protected by Title III's limitation on the DOJ's ability to disclose covered records. 52 U.S.C. 20704.

which to judge the Attorney General's demand (U.S. Br.39) dictate that a district court steps beyond its authority in attempting to evaluate the sufficiency of the Attorney General's written demand.

### C. The United States adequately stated the purpose of its demand for Minnesota's SVRL.

As explained above, the United States identified HAVA compliance as the purpose of its demand from the very first letter.[5] App. 50-51. Minnesota does not dispute that this is what the letters said; it argues instead that HAVA compliance is categorically not a permissible Title III purpose because Title III may be invoked only for a "civil-rights purpose." Minn. Br.34, 37-40. It is mistaken; no such restriction applies. But even if it did, the United States seeks assurance of HAVA compliance to ensure the right to vote is safeguarded and protected—a core civil rights purpose.

[5] Defendants argue that "basis" and "purpose" impose distinct requirements. Minn. Br.35; NAACP Br.37-39; *see also* LWV Br.33. Their authority involved a different linguistic construction, and most other cited authorities do not speak to this phrase at all. *See ProGrowth Bank, Inc. v. Wells Fargo Bank, N.A.*, 558 F.3d 809, 814 (8th Cir. 2009); *United States v. Palomar-Santiago*, 593 U.S. 321, 325 (2021); *Nielsen v. Preap*, 586 U.S. 392, 408 (2019); *Wisconsin Cent. Ltd. v. United States*, 585 U.S. 274, 277 (2018). Regardless, the United States met both requirements from the outset, as explained below.



Appellate Case: 26-2679 Page: 22 Date Filed: 09/21/2026 Entry ID: 5686064

1. Minnesota argues that, unless the "purpose" requirement of Section 303 "substantively limit[s] demands," it amounts to mere surplusage. Minn. Br.37. This conclusion does not follow—the "basis and purpose" requirement is a notice requirement, not a substantive check on the Attorney General's Title III authority. And in any case, Title III contains no textual limitation supporting Minnesota's reading. *See* 52 U.S.C. 20701-20706.

Where Congress meant to cabin a CRA remedy to a particular harm, it said so—Title VI of the same Act applies only to violations of rights "on account of race or color." *See* 52 U.S.C. 10101. Title III contains no comparable limitation. Nor is the purpose requirement surplusage under a broader reading: it still requires the Attorney General to identify, in a general way, the reason for the demand. *Coleman v. Kennedy*, 313 F.2d 867, 868 (5th Cir. 1963) (per curiam) (quoting 106 Cong. Rec. 7767 (1960) (statement of Sen. Keating)).

2. Ensuring compliance with HAVA's list-maintenance requirements is a purpose tied to protecting individual voting rights, even under Minnesota's own framing. HAVA "establish[es] minimum election administration standards." Pub. L. No. 107-252, 116 Stat. 1666



Appellate Case: 26-2679 Page: 23 Date Filed: 09/21/2026 Entry ID: 5686064

(2002) (preamble). Among other things, those standards ensure that eligible voters are not turned away from the polls, H.R. Rep. No. 329, pt. 1, 107th Cong., 1st Sess. 36 (2001), nor are their votes improperly diluted (U.S. Br.46-47 (citing *Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647, 672 (2021); *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006))).

Defendants assert that in enacting HAVA, Congress would not have assumed that Title III could be leveraged for HAVA's enforcement. Minn. Br.39-40; *see also* Alliance Br.44-45; NAACP Br.32-36. But Congress passes statutes "against the backdrop of existing law." *Parker Drilling Mgmt. Servs., Ltd. v. Newton*, 587 U.S. 601, 611 (2019) (citation omitted). HAVA imposes on States voter list-maintenance requirements and gives the Attorney General the duty to enforce those requirements. The CRA provides one tool to do so.

Minnesota, echoed by the Intervenors, warns that recognizing a HAVA-compliance purpose as sufficient would let the Attorney General "request data for any reason." Minn. Br.37-38; *see also* Alliance Br.41 ("[i]f any purpose . . . would suffice" (brackets in original; citation omitted)); NAACP Br.12, 46 (describing a "boundless theory" under which DOJ could act "whenever, wherever, and for whatever purpose it



Appellate Case: 26-2679 Page: 24 Date Filed: 09/21/2026 Entry ID: 5686064

pleases”). But even assuming the statute imposes an implicit limit on permissible purposes, this case falls comfortably within any purpose that could be inferred from the text of the statute. Neither Title III nor any other authorities identified by defendants limit the Attorney General’s power in a manner that requires denial of the at-issue Section 303 request. Title III is not limited to demands framed as race-discrimination investigations. And federal agencies generally can “investigate merely on suspicion that the law is being violated, or even just because [they] want[] assurance that it is not.” *United States v. Morton Salt Co.*, 338 U.S. 632, 642-643 (1950).

Minnesota also notes that Congress, when enacting HAVA, did not anticipate SVRL inspection by federal agents. *See* Minn. Br.22-23. That Congress did not provide an inspection provision in HAVA, however, does not preclude the United States from inspecting the full, HAVA-required SVRL under Title III. Yes, Congress has included explicit inspection provisions in other statutes like the NVRA and not in HAVA. But the provision in the NVRA is a *public* inspection provision. (Thus also explaining why courts have allowed redaction of SVRLs when inspected under the NVRA.) Title III, however, has long permitted the Attorney

General to request non-public documents under Section 303, especially given the built-in privacy safeguards in Section 304. HAVA did not need a separate inspection provision, because the inspection power already existed under Title III. *See* U.S. Br.48.

3. Minnesota further contends that the United States "did not make this argument" about the civil-rights purpose of its Section 303 request before the district court. Minn. Br.39-40. That is false. The United States argued in its motion-to-compel brief that HAVA imposes list-maintenance requirements that are integral to protecting the integrity of elections. R.Doc.72, at 9. And in opposing the Motions to Dismiss, the United States explained that "Congress has explained why list maintenance and compliance with HAVA's identifying numbers helps protect an individual's right to vote," citing HAVA's legislative history. R.Doc.102, at 10 n.7 (citing H.R. Rep. No. 329, pt. 1, 107th Cong., 1st Sess. 36 (2001)). The record refutes the forfeiture argument.

**D. The DOJ's statement of basis was sufficient.**

Minnesota argues that Title III requires a factual basis and that the United States gave none. Minn. Br.34-35. Minnesota is wrong, both about what the statute requires and about what the letters said.



Appellate Case: 26-2679 Page: 26 Date Filed: 09/21/2026 Entry ID: 5686064

1. Defendants claim that the United States' basis must be a "factual" basis. Minn. Br.35. But the requirement that the "basis" of a Section 303 demand be "factual," as opposed to "legal," is nowhere in the statute. Defendants' theory is that the "basis" of the United States' request cannot also be HAVA or Title III, because using the same statute for both "basis" and "purpose" would render "basis" superfluous. *See* Minn. Br.35-36 (citing *Benson II* and recent SVRL district court decisions).

This argument is mistaken. First, nothing in that text confines "the basis" to a factual predicate as opposed to a legal one—a State's list-maintenance obligations under HAVA are as much a "basis" for inquiry as any fact could be. *See Taylor v. Freeland & Kronz*, 503 U.S. 638, 641 (1992) (citation omitted) (holding that there was "no statutory basis" for a debtor's attempt to shield lawsuit proceeds from creditors); *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 389 (2024) (citation omitted) (describing its review of National Labor Relation Board conduct as limited to assessing whether its determination had a "reasonable basis in law"); *Neitzke v. Williams*, 490 U.S. 319, 325 (1989) (noting that a

frivolous complaint could lack an "arguable basis" either in "law or in fact").

Consistent with that reading, courts have held that the Attorney General need only "identify in a general way the reasons for his demand," *Coleman*, 313 F.2d at 868, and that "[n]o showing even of a prima facie case of a violation of Federal law need be made," *ibid*. There is likewise "no justification" for requiring the United States to "allege specific details" underlying its demand. *United States v. Lynd*, 301 F.2d 818, 822 (5th Cir. 1962) (*Lynd I*).

Second, any worry about surplusage ignores the fact that the "basis" and "purpose" of a request, even if conceptually distinct, might be closely related. The purpose of a request is its reason, end, or intent. *See Webster's New World Dictionary of the American Language* 1182 (8th coll. ed. 1960) (defining "purpose" as the intent, aim, or object of an act). The basis of a request is its justificatory principle. *See id.* at 122 (defining "basis" as the "chief supporting factor" and "the basic principle or theory"). And this is perfectly consistent with the legislative history, which confirms that the "basis and purpose" requirement was included to ensure notice "as to why such an inspection was being made" (*i.e.*,



Appellate Case: 26-2679 Page: 28 Date Filed: 09/21/2026 Entry ID: 5686064

"purpose") and "what law or what constitutional provision, right, or immunity might be involved," (*i.e.*, "basis"). 106 Cong. Rec. 6392 (1960) (statement of Rep. Cramer). Thus there is nothing redundant in saying that the United States' intent is to ensure compliance with HAVA (*see* App. 88), and that the principle justifying its request is the fact that HAVA places certain federally enforceable list-maintenance obligations on Minnesota (*see* App. 50, 87-88).

The "factual" versus "legal" distinction urged by defendants is thus illusory. Both letters directly provided the factual "basis" for the United States' request, namely, the fact that Congress had imposed on Minnesota federally-enforceable obligations under HAVA. That is a materially different demand from the bare, standalone citation to "Title III" that Minnesota attacks as circular. Minn. Br.35-36 ("DOJ could always cite Title III, making the basis requirement superfluous."). That fact exists independently of the United States' purpose for making a particular request.

2. Minnesota wrongly claims that the United States failed to make this argument below. Minn. Br.36. That is simply false. The United States argued at length, in both its Motion-to-Compel briefing and its



Appellate Case: 26-2679 Page: 29 Date Filed: 09/21/2026 Entry ID: 5686064

Opposition to the Motions to Dismiss, that the letters' HAVA references supplied the basis for its demand. *See* R.Doc.72, at 6, 9, 13-14; R.Doc.102, at 5, 10, 14-16.

### E. Mere allegations of purported improper purposes do not eliminate the United States' entitlement to records under Section 303.

Defendants erroneously assert that the Attorney General's stated purpose of assessing Minnesota's HAVA compliance is pretextual, and that his true motives are to establish a national voter database to target and remove ineligible individuals from the voter rolls, to enforce immigration laws, and to exert federal control over elections. Minn. Br.42-44; Alliance Br.51; NAACP Br.27-32; LWV Br.37-39. As the United States explained in its Opening Brief (at 49-50), defendants' speculative allegations of pretext fall well short of satisfying the "heavy burden" of supporting their assertions with evidence.

As an initial matter, defendants' allegation of bad faith "go[] to the truth of the DOJ's allegations and cannot be addressed on a motion to dismiss." *United States v. Benson*, 819 F. Supp. 3d 753, 767 (W.D. Mich.) (*Benson I*). Indeed, Alliance concedes as much. Alliance Br.51. In any event, defendants' claim also fails on the merits. As evidence of pretext,

they rely on public representations by Department and other federal officials, including Executive Orders, as to what the DOJ intended to do with the voter information; and commentary on the United States' alleged intentions by other district courts. Minn. Br.42-43; Alliance Br.51; NAACP Br.27-30; LWV Br.37-39. Because the cited DOJ actions are consistent with the demand's stated purpose of assessing a State's compliance with HAVA, they are not evidence of pretext.

Moreover, contrary to defendants' suggestion (Minn. Br.43; Alliance Br.51; NAACP Br.49-50; LWV Br.14-16), the DOJ's coordination with the Department of Homeland Security (DHS) is far from nefarious. The DHS maintains the Systematic Alien Verification for Entitlement Database (SAVE). DOJ originally planned to use SAVE in the same manner and form that States and localities have to determine eligibility of voters, *see* U.S. Citizenship & Immigr. Servs., SAVE Agency Search Tool, https://tinyurl.com/n7fpu4zz (last visited Sept. 17, 2026), pursuant to a user agreement under which the Civil Rights Division maintains control over the files it uploads into the service.[6]

---

[6] In *League of Women Voters v. United States Department of Homeland Security*, 835 F. Supp. 3d 79, 137 (D.D.C.), *appeals pending*,

## II. The DOJ's demand for an electronic, unredacted copy of Minnesota's SVRL does not implicate or violate federal or state privacy laws.

The district court did not reach defendants' privacy-related arguments, but defendants argue that the district court's opinion can be affirmed on those bases. Minn. Br.46-51; Alliance Br.45-50; LWV Br.43-46. The Court should reject these arguments.

### A. Federal law preempts any contrary Minnesota privacy law.

Congress enacted broad regulations over the conduct of federal elections in the two statutes at issue in this litigation pursuant to its authority under the Elections Clause. U.S. Br.54-57. Title III imposes a "sweeping" obligation on election officials to preserve and, on demand of the Attorney General, to produce registration records pertaining to federal elections, *Kennedy v. Lynd*, 306 F.2d 222, 226 (5th Cir. 1962) (*Lynd II*), and imposes its own privacy protections for records subject to these demands, *see* 52 U.S.C. 20704. To the extent Minnesota privacy law poses a barrier to the Attorney General's demand under Title III for

---

Nos. 26-5243, 26-5301 (D.C. Cir. docketed June 29, and Aug. 26, 2026), the district court has "set[] aside and vacate[d]" the 2025 SAVE system. The Department will not use the SAVE system pending the resolution of that aspect of that litigation.

Minnesota's unredacted SVRL, the CRA preempts that state law. *See* U.S. Const. Art. VI, Cl. 2.

Defendants contend that there is no conflict between federal and state law because neither HAVA nor Title III requires the disclosure of personal and sensitive voter information. Minn. Br.46; Alliance Br.45-47. Defendants further suggest that the interpretation of Title III's coverage should be guided by the interpretation of the public-inspection provision of the later-enacted NVRA, which allows redactions of personal voter information. Minn. Br.46; Alliance Br.46. As the United States explained in its Opening Brief (at 51-53), however, Congress deemed it important for States to obtain identifying information to ensure each registrant is eligible to vote; this information should not be shielded from the Attorney General's Title III authority.[7]

---

[7] Alliance further argues that "the Congress that enacted the CRA could not have intended to preempt state laws exempting driver's license numbers and social security numbers from inspection because federal law did not even require registrants to provide that information until 2002." Alliance Br.46-47. Congress's "expectations" of how a statute may be applied in light of present circumstances do not control the meaning of the statute. *Bostock v. Clayton Cnty.*, 590 U.S. 644, 683 (2020).



Appellate Case: 26-2679 Page: 33 Date Filed: 09/21/2026 Entry ID: 5686064

### B. The DOJ's demand complied with the Privacy Act.

Defendants make two challenges to the DOJ's demand based on the Privacy Act, one substantive and one procedural. Neither challenge has merit.

1. Defendants argue that disclosure of the unredacted SVRL threatens the First Amendment rights of voters, which the Privacy Act protects, *see* 5 U.S.C. 552a(e)(7), because "[v]oter registration, participation in elections, and party affiliation are all forms of protected political expression." LWV Br.43-44; *see* Minn. Br.49. Even accepting that as true, neither defendant explains how the fact that someone has registered "describ[es] *how* any individual exercises [First Amendment] rights"—which triggers the Privacy Act—as opposed to *whether* the individual exercises his or her rights—which does not. 5 U.S.C. 552a(e)(7) (emphasis added); *see* U.S. Br.60 (consenting to "redaction of information" regarding "party affiliation and how an individual has voted").[8]

[8] NAACP's argument that the DOJ's interpretation of Title III presents significant First Amendment concerns (NAACP Br.44-53) misses the mark. As the United States explained in its Opening Brief (at 52), Congress considered the burden that disclosure of personal information would place on the right to vote and decided in enacting



Appellate Case: 26-2679 Page: 34 Date Filed: 09/21/2026 Entry ID: 5686064

Second, and dispositively, the SVRL is "pertinent to and within the scope of an authorized law enforcement activity." 5 U.S.C. 552a(e)(7). Contrary to Minnesota's contention that "DOJ has no role to play in auditing states' voter data" (Minn. Br.49), an unredacted SVRL is relevant to "[e]nforcing the CRA and HAVA" (U.S. Br.59). That is indeed authorized law enforcement. *E.g.*, 52 U.S.C. 20702, 21111.

2. Defendants further argue that the DOJ failed to comply with the maintenance provision's requirement that it publish a System of Records Notice (SORN) in the Federal Register before "establish[ing] or revis[ing]" a "system of records," 5 U.S.C. 552a(e)(4). Minn. Br.47-48; Alliance Br.48-50; LWV Br.44-45. As the United States explained in its Opening Brief (at 57-60), however, an electronic, unredacted copy of Minnesota's SVRL is covered by the existing SORN titled, JUSTICE/CRT – 001, "Central Civil Rights Division Index File and Associated Records," 68 Fed. Reg. 47,611 (Aug. 11, 2003); 70 Fed. Reg. 43,904 (July 29, 2005); and 82 Fed. Reg. 24,147 (May 25, 2017).

---

HAVA that this burden was outweighed by the public interest in fair and secure elections.



Appellate Case: 26-2679 Page: 35 Date Filed: 09/21/2026 Entry ID: 5686064

Defendants respond that this SORN is insufficient. Alliance argues that the SORN "does not even *mention* HAVA or the CRA." Alliance Br.48. But as explained (U.S. Br.58), the SORN applies to records "kept . . . in the ordinary course of fulfilling the responsibility assigned to [the Civil Rights Division] under the provisions of 28 CFR 0.50, 0.51," 68 Fed. Reg. at 47,611, which grant the Civil Rights Division responsibility for "[e]nforcement of all Federal statutes affecting civil rights, including those pertaining to elections and voting," 28 C.F.R. 0.50(a).

Alliance's accusation that the SORN "does not disclose what DOJ intends to do with the voter data it collects" (Alliance Br.48) incorrectly demands a level of notice the Privacy Act does not require. The Act requires the United States to disclose "each routine use of the records . . . and the purpose of such use." 5 U.S.C. 552a(e)(4). Again, the United States made clear that the records will be used to enforce civil-rights statutes, "including those pertaining to elections and voting." 28 C.F.R. 0.50(a).

No more persuasive is defendants' argument that the SORN's coverage of "[s]ubjects of investigations, [and] victims," 68 Fed. Reg. at

47,611, cannot cover Minnesota registered voters. Minn. Br.48; Alliance Br.49; LWV Br.44. Alliance's overwrought suggestion (Alliance Br.49) that designating voters as "subject[s]" would "trigger a well-advised recipient to seek criminal defense counsel" mistakenly conflates "targets," who are individuals for whom the prosecutor or grand jury "has substantial evidence linking him or her to the commission of a crime," and "subjects." *American Oversight v. United States Dep't of Just.*, 45 F.4th 579, 582 n.2 (2d Cir. 2022) (citation omitted). U.S. Br.59. Furthermore, no defendant explains why eligible voters are not potential "victims" of HAVA non-compliance, 68 Fed. Reg. at 47,611, when their votes may be diluted by that non-compliance. *See Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647, 672 (2021).

Lastly, Alliance asserts that the SORN covers only "case files, matters, memoranda, correspondence, studies, and reports relating to enforcement of civil rights laws" and therefore does not encompass the SVRL. Alliance Br.50 (quoting 68 Fed. Reg. at 47,611). This language is not limited to "run-of-the-mill files," *ibid.*, but extends to all "matters" relating to the enforcement of civil-rights laws.



Appellate Case: 26-2679 Page: 37 Date Filed: 09/21/2026 Entry ID: 5686064

### C. The E-Government Act does not prevent the DOJ from obtaining Minnesota's SVRL.

Minnesota argues that the DOJ's demand violated the E-Government Act because the DOJ failed to conduct a privacy impact assessment (PIA) required by the statute before initiating the collection of personal voter information. Minn. Br.50; *see* E-Government Act of 2002, Pub. L. No. 107-347, § 208, 116 Stat. 2921-2922 (44 U.S.C. 3501 note). Its sole rejoinder to the United States' argument (U.S. Br.60-63) is that the DOJ's demand constituted a "collection of information" under the E-Government Act because Minnesota's "voter-registration records are the results of identical questions posed to more than ten people." Minn. Br.50. But the statute only applies where the Government seeks "answers to identical questions posed to, or identical reporting or recordkeeping requirements imposed on, ten or more persons." 44 U.S.C. 3502(3)(A)(i). Minnesota has not explained how demanding production of a pre-existing document is akin to asking a question or imposing a reporting or recordkeeping requirement. *See* U.S. Br.61.



Appellate Case: 26-2679 Page: 38 Date Filed: 09/21/2026 Entry ID: 5686064

### D. The Driver's Privacy Protection Act does not prevent the DOJ from obtaining Minnesota's SVRL.

Minnesota also argues that the DOJ's demand violated the Driver's Privacy Protection Act, 18 U.S.C. 2721 *et seq.* Minn. Br.50-51. This argument fails because the disclosure is allowed "[f]or use by any government agency . . . in carrying out its functions," such as law enforcement. 18 U.S.C. 2721(b)(1); *see* U.S. Br.63-64. Minnesota's sole response is that reviewing individual voter records for HAVA compliance is not a DOJ function and that, in any event, the single snapshot of Minnesota's SVRL would not help the DOJ assess the State's compliance—*i.e.*, whether it is making "reasonable efforts to remove ineligible voters." Minn. Br.51. This argument should be rejected for the reasons set forth in the United States' Opening Brief (at 36-38, 47-48).

## III. If this Court reverses, it should instruct the district court to order immediate production of the SVRL.

This Court should reverse the district court's Order dismissing the United States' Title III claim and denying the United States' Motion to Compel and remand with instructions to order Secretary Simon to immediately produce the requested unredacted SVRL immediately. Contrary to Minnesota's contention of Minnesota (Minn. Br.34) and

Alliance (Alliance Br.51), there is no need to remand for discovery regarding whether other Title III requirements were satisfied. As the United States explained in its Opening Brief (at 39-40, 49-50), defendants may not challenge the factual accuracy of the basis and purpose for the DOJ's demand. Similarly, no remand is needed to determine the United States' compliance with the privacy laws discussed in Argument II. As previously acknowledged, if information must be withheld based on 5 U.S.C. 552a(e)(7), the district court can tailor its Order accordingly. That acknowledgement does not open up the issue of compliance with the Privacy Act because the United States has so complied. Moreover, such tailoring would in no way alter the State's obligation to comply with the Attorney General's demand. *See Kennedy v. Lynd*, 306 F.2d 222, 230 (5th Cir. 1962) (acknowledging district courts' authority to issue protective orders in enforcing Section 305).

## CONCLUSION

For the reasons stated in this brief and the United States' Opening Brief, this Court should reverse the district court's judgment dismissing the DOJ's Title III claim and denying the Motion for Order to Compel Federal Election Records, and remand with instructions to order



Appellate Case: 26-2679 Page: 40 Date Filed: 09/21/2026 Entry ID: 5686064

Secretary Simon to immediately produce the requested unredacted SVRL.

Respectfully submitted,

HARMEET K. DHILLON
Assistant Attorney General

ERIC A. SELL
Deputy Assistant Attorney General

s/ Andrew G. Braniff
ANDREW G. BRANIFF
DAVID N. GOLDMAN
MEREDITH L. BAKER
Attorneys
Department of Justice
Civil Rights Division
Appellate Section
Ben Franklin Station
P.O. Box 14403
Washington, D.C. 20044-4403
(202) 532-3803

Date: September 18, 2026

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limits of Federal Rule of Appellate Procedure 32(a)(7)(B)(ii) because the brief contains 6411 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f). This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared in Century Schoolbook 14-point font using Microsoft Word for Microsoft 365. This brief complies with Eighth Circuit Rule 28A(h)(2) because the ECF submission has been scanned for viruses with the most recent version of Crowdstrike (Version 7.39.21108.0.0) and is virus-free according to that program.

s/ Andrew G. Braniff
ANDREW G. BRANIFF
Attorney

Date: September 18, 2026

## CERTIFICATE OF SERVICE

I certify that on September 18, 2026, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the appellate CM/ECF system.

I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

s/ Andrew G. Braniff
ANDREW G. BRANIFF
Attorney